Jeff **ADAMS**, Mark **Wright** and
C.T. **Sharp**, Appellants,

v.

**CITY OF MANCHESTER**, Respondent.

No. ED 89154.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 23, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 11, 2007.

Nelson L. Mitten, Frederick J. Berger, Michael P. Wolf, St. Louis, MO, for Appellant.

Patrick R. Gunn, St. Louis, MO, for Respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

Jeff Adams, Mark Wright, and C.T. Sharp (hereinafter and collectively, "Citizens") appeal the trial court's judgment granting summary judgment in favor of the City of Manchester, Missouri (hereinafter, "the City"), Brian Oliver, Larry Miles, Mike Clement, Debbie Mizerany, Alan Wenzel, James Labit, Tom Brown, and Charles Steffens (hereinafter and collectively, "Defendants"). Citizens raise four points on appeal claiming the trial court erred in granting summary judgment in that genuine issues of material fact existed as to whether: (1) the City Clerk or the trial court were empowered to substitute the execution of one bill as an ordinance over another *nunc pro tunc;* (2) Defendants' amendment of the City's Comprehensive Plan was arbitrary and unreasonable; (3) the trial court abused its discretion in failing to grant Citizens a continuance to permit further discovery pursuant to Rule 74.04(f); and (4) Defendants complied with Section 99.810 RSMo (2000)[1] requirements when they adopted the ordinance enabling the development of the Manchester Highlands Project. We affirm.

The City is a city of the fourth class organized under the statutes of the State of Missouri. Citizens are all City residents who live in proximity to the area at issue in this lawsuit, but not directly within the area designated for the Manchester Highlands Project. Defendants are or were members of the City's Planning and Zoning Commission (hereinafter, "P & Z Commission").

On September 17, 2001, the City's Board of Aldermen (hereinafter, "the Board") held a public hearing to consider an amendment to the City's zoning ordinances relating to the composition of the P & Z Commission. The P & Z Commission was then comprised of nine members, which included the mayor, a member selected by the Board, a City official, and six citizens. Under the original proposed amendment, identified as Bill No. 01–1349 (hereinafter, "the Original Bill"), the P & Z Commission would be composed of the mayor, eight

---

1. All statutory references are to RSMo (2000) unless otherwise indicated.

citizens, and a member of the Board, serving as an ex-officio, nonvoting member. The Board did not vote on the Original Bill at this meeting.

The Board held another meeting on October 1, 2001. At this meeting, the Board amended the Original Bill and changed the proposed composition of the P & Z Commission. The amended bill (hereinafter, "the Substitute Bill") reduced the number of citizens from eight to six, and included the mayor and a Board member, serving as an ex-officio, nonvoting member. The Board unanimously approved the Substitute Bill, but it was not signed by the mayor at this time. The City's records reflect the mayor signed the Original Bill instead. However, the P & Z Commission altered the composition of its membership in October 2001, in accordance with the changes outlined in the Substitute Bill.

In 2005, the City initiated a redevelopment process and requested proposals for the northeast quadrant of the Manchester Road and Highway 141 intersection (hereinafter, "the Manchester Highlands Project"). In response to this request, Pace Properties, Inc. (hereinafter, "Pace") submitted its proposal which encompassed a fifty-five acre tract of land with a retail component in excess of 400,000 square feet. This plan would extend commercial uses beyond the currently existing commercial uses on the north side of Manchester Road, necessitating an amendment to the City's Comprehensive Plan.

Prior to voting on this issue, the P & Z Commission held public hearings and gathered substantial information and materials about the propriety of amending the City's Comprehensive Plan. Subsequently, this plan was discussed at the P & Z Commission meeting on July 25, 2005. In conjunction with this meeting, there was a public hearing to discuss amending the City's Comprehensive Plan to accommodate the Manchester Highlands Project. The P & Z Commission voted and approved Resolution No. 05–01, the amendment to the City's Comprehensive Plan, with four votes in favor, none opposed, one abstention, and two members excused from voting.

In connection with the Manchester Highlands Project, Pace sought tax increment financing (hereinafter, "TIF") to be part of the project's financing. In response, the City retained Peckham, Guyton, Albers & Viets, Inc., (hereinafter "PGAV"), an urban planning consulting firm, to create a redevelopment plan for the project. The City's TIF Commission, in turn, undertook a cost-benefit analysis to determine whether the project was feasible financially. PGAV prepared and submitted its Initial Redevelopment Plan to the City's TIF Commission and included a cost-benefit analysis.

On November 21, 2005, the Board met and adopted three separate ordinances, Ordinance No. 05–1626, 05–1627, and 05–1628 (hereinafter, "the 2005 Ordinances"). These ordinances approved the Initial Redevelopment Plan and allowed the use of TIF, which permitted the Manchester Highlands Project to move forward.

Citizens filed their original petition against Defendants seeking declaratory judgment on two counts on December 6, 2005. Count I alleged the P & Z Commission's vote to amend the City's Comprehensive Plan was null and void due to its violation of Section 89.340. Count II alleged the P & Z Commission failed to "make careful and comprehensive surveys and studies of the existing conditions and probable growth of the municipality" in violation of Section 89.350. Defendants filed a motion for partial summary judgment as to Count I, which the trial court granted, dismissing the count with prejudice. Defendants then filed a motion to dismiss Count II, which was granted;

however, the trial court permitted Citizens to amend their petition with respect to Count II, which they did on July 24, 2006.

Citizens' first amended petition contained two counts. Count I appeared to set forth the same allegations as in the original petition with respect to the P & Z Commission's violation of Section 89.340. Count II elaborated upon their claim in the original petition that the P & Z Commission violated Section 89.350. Defendants again moved for summary judgment with respect to Count II and argued allegations in Count I were dismissed with prejudice as a result of the trial court's prior judgment.

While Defendants' second motion for partial summary judgment was pending, Citizens filed a second amended petition on September 21, 2006. This petition contained three counts, with Counts I and II essentially reiterating the claims of their prior petitions. Count III challenged the sufficiency of PGAV's cost-benefit analysis which Defendants relied upon when voting to approve the Initial Redevelopment Plan. Defendants filed a third motion for partial summary judgment with respect to Count III of the second amended petition. After extensive filings, the trial court granted all of Defendants' motions for summary judgment on November 18, 2006. Citizens now appeal. More facts will be adduced as needed in connection with our analysis of Citizens' points on appeal.

■ It is well-settled that when considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant. *ITT Commercial Fin. v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo*. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propri-

ety of sustaining the motion initially. *Id.* The burden of proof on a summary judgment movant is to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378.

■ A "defending" party may establish a right to summary judgment by showing: (1) facts that negate any one of the claimant's elements; (2) the nonmovant has not been able to produce, or will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any of the claimant's elements; or (3) there is no genuine dispute as to the existence of facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

■ The nonmovant must show by affidavits, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be without any genuine dispute is, in fact, genuinely disputed. *Id.* A "genuine issue" exists where the record contains competent materials that establish a plausible, but contradictory, version of the movant's essential facts. *Id.* at 382.

■ In their first point on appeal, Citizens claim the trial court erred in granting summary judgment in Defendants' favor on Count I of their original petition. Count I alleged the proposed amendment to the City's Comprehensive Plan failed because it was not passed by a majority vote of the full membership of the P & Z Commission. Citizens focus on the differing compositions of the P & Z Commission as proposed in the Original Bill and the Substitute Bill. Citizens allege there are genuine issues of material fact as to whether the City Clerk or the trial court had authority to substitute the Substitute Bill for the Original Bill *nunc pro tunc*, in the City's records.

Section 79.130 mandates "[n]o ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it. . . ." It is undisputed the Board duly voted on and approved the Substitute Bill unanimously. After final passage by the Board, Section 79.130 further requires "[n]o bill shall become an ordinance until it shall have been signed by the mayor or person exercising the duties of the mayor's office, or shall have been passed over the mayor's veto, as herein provided." The procedure set forth by Section 79.130 is mandatory. *Cimasi v. City of Fenton,* 659 S.W.2d 532, 535 (Mo.App. E.D.1983). Failure to comply with the mandates of Section 79.130 results in a substantive defect, rendering an ordinance void. *Id.* at 536.

The parties dispute the significance of the mayor's signing of the Original Bill as opposed to the Substitute Bill. The mayor signed the Original Bill in October 2001; however, the P & Z Commission changed its composition to reflect the Substitute Bill's recommendation and conducted itself accordingly from that date forward. Citizens argue it is unclear why the mayor signed the Original Bill as opposed to the Substitute Bill, thus creating a genuine issue of material fact.

Section 79.140 states in pertinent part:

The mayor shall have power to sign or veto any ordinance passed by the board of aldermen; provided, that should he [or she] neglect or refuse to sign any ordinance and return the same with his objections, in writing, at the next regular meeting of the board of aldermen, the same shall become a law without his signature.

Even viewing the evidence in the light most favorable to Citizens, the fact that the mayor executed the wrong bill is of no avail. The mayor could not lawfully execute the Original Bill in that "no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it" pursuant to Section 79.130. Here, it is undisputed the Board did not take a vote on the Original Bill, much less approve it by a majority. Therefore, even though the mayor signed the Original Bill, it had no legal effect and would be void, *ab initio,* because it was not duly passed. This is in contrast to the proper passage of the Substitute Bill as reflected in the October 1, 2001 minutes.

On February 28, 2006, after litigation commenced, the City Clerk reviewed the City records and corrected them, *nunc pro tunc,* to reflect the adoption of the Substitute Bill by removing the Original Bill that was signed by the mayor and replacing it with a signed copy of the Substitute Bill in the City's records. Citizens claim the City Clerk lacked authority to do this in that it resulted in a change in the City's records as opposed to an amendment of the records to reflect the accuracy of the proceedings. We disagree.

Section 79.320 spells out the duties of a city clerk of a city of the fourth class: "Among other things, the city clerk shall keep a journal of the proceedings of the board of aldermen [and][h]e [or she] shall safely and properly keep all the records and papers belonging to the city which may be entrusted to his [or her] care. . . ." As a custodian and keeper of the city's records, a city clerk is empowered through his or her official capacity to amend the city records to make the record speak the truth. *State ex rel. William R. Compton Co. v. Walter,* 324 Mo. 290, 23 S.W.2d 167, 170 (Mo.1929). *See also, Cunningham v. City of Butler,* 256 S.W.2d 767 (Mo.1953); *Frago v. City of Irondale,* 364 Mo. 500, 263 S.W.2d 356 (Mo.1954); and *City of Inde-*

*pendence v. Hare,* 359 S.W.2d 33 (Mo.App. K.C.Dist.1962).

Here, the record reflects the Substitute Bill was voted and passed upon unanimously by the Board. The mayor presided over the October 1, 2001 meeting where this occurred and voiced no objections to the bill's passage. Further, the reasonable inference to be drawn from the City's claim the mayor inadvertently signed the wrong copy of the bill is manifested in the actions the P & Z Commission took upon passage of the Substitute Bill. In October 2001, the P & Z Commission changed its composition to comport with the Substitute Bill and conducted official City business for over four years based upon its belief that the Substitute Bill was valid. The mayor is a member of the P & Z Commission and we note the mayor who presided over the October 1, 2001 meeting is the same mayor who later signed the Substitute Bill, without objection, which was placed in the City's records in February 2006.

Based upon this undisputed evidence, we find the City Clerk was empowered to amend the City's records, *nunc pro tunc,* to make the record speak the truth to reflect the passage of the Substitute Bill. The trial court did not err in failing to find a genuine issue of material fact existed with respect to this issue. Point denied.

■ In their second point, Citizens argue there are genuine issues of material fact with respect to Count II of their first amended petition regarding whether Defendants' amendment of the City's Comprehensive Plan was arbitrary and unreasonable, thus precluding summary judgment. Citizens argue Defendants failed to comply with Section 89.350 in that they did not "make careful and comprehensive surveys and studies of the existing conditions and probable future growth of the municipality." Citizens also claim Defendants failed to disclose the specific plans, drawings, memorandums, maps, and minutes they reviewed prior to voting to amend the City's Comprehensive Plan when Citizens requested copies of such pursuant to Missouri's Sunshine Law, Section 610.023.

On August 16, 2005, after the P & Z Commission voted and approved the amendment to the City's Comprehensive Plan, but before filing suit, Citizens submitted a request pursuant to Missouri's Sunshine Law and requested the City's custodian of records provide, *inter alia,*:

> All minutes, resolutions, studies, reports, recommendation, rules, regulations, correspondence, memorandum, notes, maps, plans, charts and descriptive and explanatory matter, and comprehensive surveys and studies of the existing conditions and probable future growth of the City, including, but not limited to, Resolution No. 05–01.

The City responded by sending Citizens approximately ten pages of documents, including the resolution, a document entitled, "Comprehensive Plan Text Amendment", a public hearing notice, a portion of the July 25, 2005 meeting minutes, a copy of Section 89.360, and a copy of Citizens' request letter. Citizens subsequently filed suit in December 2005.

A planning and zoning commission is required pursuant to Section 89.350 to "make comprehensive surveys and studies of the existing conditions and probable future growth of the municipality" when preparing a city's plan. Section 89.350 further mandates the city's plan "shall be made with the general purpose of guiding and accomplishing a coordinated development of the municipality which will, in accordance with existing and future needs, best promote the general welfare, as well

as efficiency and economy in the process of development."

According to the affidavits submitted by the P & Z Commission members in support of Defendants' motion for partial summary judgment, the members received input from City staff members, the Board, the City's TIF Commission, and the public. Specifically, they averred they had the opportunity to examine and consider the following: numerous plans, drawings, and a memorandum presented by the City's Director of Planning, Zoning, and Economic Development; P & Z Commission discussions at various meetings held during the summer of 2005; comments from the public; articles appearing in various newspapers of general circulation; and general public discussions of the project during the April 2005 campaign season and beyond until July 25, 2005. Each member's affidavit further averred he or she considered "ample information relative to the appropriateness" of the amendment and the personal decision to vote on the issue was thoughtful and well-considered.

Citizens now argue on appeal a genuine issue of material fact exists because there was a conflict between the documents produced prior to litigation and documents Defendants claim they relied upon when voting to amend the City's Comprehensive Plan when seeking summary judgment. This apparent conflict does not rise to the level of creating a genuine issue of material fact as to whether Defendants' failed to "make comprehensive surveys and studies of the existing conditions and probable future growth of the municipality" as required by Section 89.350.

Initially, we note Citizens do not allege in any of their petitions a claim for relief based upon Defendants' alleged violation of Missouri's Sunshine Law when producing documents prior to litigation. Further, the record reveals Citizens failed to issue any request for production of documents to Defendants in an effort to secure any documents after filing suit. The record also reflects many of the materials Citizens claim were withheld from them were available for viewing by the public at the various public meetings held prior to the vote and were available upon request to the public at the City's office. Moreover, Citizens failed to refute the averments in Defendants' affidavits that they examined voluminous documents, held discussions, consulted with various City officials, and conducted public meetings on the issue prior to voting. Citizens have presented no evidence demonstrating Defendants' actions constituted a violation of the mandates of Section 89.350 or how a review of the documents would reveal such a violation occurred. "A 'genuine' dispute is a real and substantial one, not one consisting merely of conjecture, theory, and possibilities." *Mueller v. Bauer*, 54 S.W.3d 652, 657 (Mo.App. E.D.2001). Citizens have failed to demonstrate a genuine issue of material fact exists. Therefore, the trial court did not err in entering summary judgment in Defendants' favor on this point. Point denied.

■ In their third point, Citizens argue the trial court abused its discretion in failing to grant them a continuance to conduct additional discovery prior to entering summary judgment. Specifically, Citizens claim the trial court should have granted a continuance pursuant to Rule 74.04(f) in light of the contradictory affidavits Defendants submitted.

■ Rule 74.04(f) states:

Should it appear from the affidavits of a party opposing the motion that for reasons stated in the affidavits facts essential to justify opposition to the motion [for summary judgment] cannot be presented in the affidavits, the court may

refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A party seeking a continuance must file an affidavit supporting its motion and "must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing." *Binkley v. Palmer*, 10 S.W.3d 166, 173 (Mo.App. E.D.1999). The affidavit must do more than allege further discovery might provide the necessary evidence; rather, it must describe the evidence. *Id.*

▮▮▮▮ The trial court has discretion to grant or deny additional time to depose a witness before ruling on a pending summary judgment motion. *Chouteau Auto Mart, Inc. v. First Bank of Missouri*, 91 S.W.3d 655, 659 (Mo.App. W.D.2002). "Absent a showing that additional discovery would have shown the existence of any genuine issue of material fact, a trial court does not err or abuse its discretion in refusing a request for a continuance to permit discovery prior to ruling on a summary judgment motion." *Binkley*, 10 S.W.3d at 173.

Citizens offered an affidavit from Nelson Mitten (hereinafter, "Mitten affidavit"), Citizens' attorney, to support its request for a continuance to conduct additional discovery. The Mitten affidavit alleged a conflict existed between the materials he received prior to litigation pursuant to Missouri's Sunshine Law and the materials Defendants claim to have relied upon when determining whether to amend the City's Comprehensive Plan. The Mitten affidavit states in light of this contradiction, "[Citizens] may need to undertake additional discovery, including depositions of Defendants who have completed affidavits, concerning the issues raised by the fact that

previously the City indicated no materials were reviewed, while the individual Defendants now indicate certain materials were reviewed."

▮▮▮▮ "Rule 74.04(f) contemplates that the opponent to the motion for summary judgment must call the court's attention to the uncompleted discovery and show by affidavit why it is material and important for the discovery to be completed." *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App. E.D.1993). Citizens' request merely alleged further discovery *might* provide the necessary evidence to create a factual issue and fails to specify what material evidence it hoped to glean from deposing Defendants. In fact, the Mitten affidavit stated it *"may* need to undertake additional discovery" not that these depositions were essential to uncover a genuine issue of material fact.

Moreover, our review of the record reveals Citizens filed their original petition on December 5, 2005. Citizens failed to serve any written discovery requests upon Defendants until November 3, 2006, nearly one year beyond their initial filing date, and six weeks after Defendants sought summary judgment on Count II. Trial had been set for November 20, 2006, since early August 2006. Based on Citizens' insufficient affidavit, coupled with the proximity of the requests to the trial date, we cannot say the trial court abused its discretion in denying Citizens' motion for a continuance to conduct additional discovery. Point denied.

▮▮▮▮ In their final point, Citizens argue the trial court erred in granting summary judgment in that there are genuine issues of material fact as to whether Defendants complied with Section 99.810(1)(5) when they adopted the Initial Redevelopment Plan. Citizens argue PGAV's cost-benefit analysis presented to Defendants failed to

address the future costs of the project as it related to the repair, replacement, and/or maintenance of any of the improvements proposed and the City's ability to pay for those costs.

Defendants claim this point has been rendered moot by the City's passage of Ordinance No. 07–1740 (hereinafter, "the 2007 Ordinance") on March 5, 2007, while this appeal was pending. This ordinance codifies the City's approval of an Amended Redevelopment Plan & Project (hereinafter, "Amended Redevelopment Plan") for the Manchester Highlands Project based upon an amended cost-benefit analysis. In response, Citizens filed a new lawsuit questioning these actions on March 19, 2007, specifically challenging numerous aspects of the amended cost-benefit analysis Defendants relied upon when approving the Amended Redevelopment Plan.

To support their mootness argument, Defendants filed a motion for leave to supplement the legal file in this case to provide this Court with the 2007 Ordinance, the accompanying exhibits and amended cost-benefit analysis, and Citizens' Petition for Declaratory Judgment and Injunctive Relief filed in St. Louis County Court, Cause No. 07CC–00162. Defendants claim these documents are vital to this Court's assessment of its jurisdiction regarding their allegation that Citizens' fourth point has been rendered moot. We grant Defendants' motion to supplement the legal file.

 "A threshold question in any appellate review of a controversy is the mootness of the controversy." *Braveheart Real Estate Co. v. Peters,* 157 S.W.3d 231, 233 (Mo.App. E.D.2004)(*quoting State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001)). "Because mootness implicates the justiciability of a case, an appellate court may dismiss a case for mootness *sua sponte." Reed,* 41 S.W.3d at 473.

" 'Even a case vital at inception of the appeal may be mooted by an intervening event which so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion.' " *City of Manchester v. Ryan,* 180 S.W.3d 19, 22 (Mo.App. E.D.2005)(*quoting Reed, supra* ). In deciding whether a case is moot, an appellate court is allowed to consider matters outside of the record. *Reed,* 41 S.W.3d at 473.

Citizens claim this issue is ripe for determination, and therefore, has not been rendered moot. Citizens argue the adoption of the 2007 Ordinance approving the Amended Redevelopment Plan has not caused the 2005 Ordinances at issue here to be repealed. Specifically, Citizens point out the 2007 Ordinance expressly incorporates the Initial Redevelopment Plan into the Amended Redevelopment Plan and there is no evidence the 2007 Ordinance supercedes the 2005 Ordinances. As a result, Citizens claim the 2005 Ordinances are still valid, and therefore, review of this point is proper. We disagree.

 Our review of the record indicates Citizens' new petition pending in St. Louis County concedes "material and substantial changes" have been made to the Manchester Highlands Project through the revisions that took place while this appeal was pending, including the submission of an amended cost-benefit analysis. Thus, the passage of the 2007 Ordinances, resulting in an Amended Redevelopment Plan and accompanying amended cost-benefit analysis, significantly alters the position of the parties in this lawsuit as their arguments relate to the original cost-benefit analysis. Declaratory relief "is not available to adjudicate hypothetical or speculative situations that may never come to pass." *Missouri Soybean Ass'n v. Missouri Clean Water Com'n,* 102 S.W.3d 10, 25 (Mo. banc 2003). As such, we find Citizens' fourth

point is rendered moot because a discussion of the specific alleged defects in the original cost-benefit analysis presented to the City with respect to the passage of the 2005 Ordinances would result in a hypothetical opinion.

The trial court's judgment is affirmed.

MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., concur.