Larry WHITE, Appellant/Plaintiff,

v.

CITY OF LADUE, Missouri,
Respondent/Defendant.

No. ED 99585.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 17, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Jan.
30, 2014.

Application for Transfer Denied
March 25, 2014.

---

1. All statutory references are to RSMo 2000, as amended.

Lynette M. Petruska, St. Louis, MO, for appellant.

Timothy G. Carmody, St. Louis, MO, for respondent.

## OPINION

ANGELA T. QUIGLESS, Judge.

### I. INTRODUCTION

Appellant Larry White ("White") appeals the judgment of the Circuit Court of St. Louis County in favor of Respondent City of Ladue (the "City"). In his nine points on appeal, White contends that the trial court erred in: (1) dismissing his public policy wrongful discharge claims in Counts I through III against the individual defendants; (2) prohibiting him from conducting discovery into communications regarding Form D0112 and sovereign immunity on the basis of attorney-client and insurer-insured privilege; (3) denying his second motion for additional time to conduct discovery and supplement his response to the City's second motion for summary judgment; (4) denying his motion to strike the City's second motion for summary judgment; (5) granting summary judgment in favor of the City on his public policy wrongful discharge claims in Counts I through III on the basis of sovereign immunity; (6) granting summary judgment in favor of the City as to his Sunshine Law claim (Count IV); (7) denying his first motion for sanctions; (8) denying his amended third motion for sanctions; and (9) failing to order the City to produce certain documents relevant to his public policy wrongful discharge claims. For the reasons that follow, we disagree and affirm the judgment of the trial court.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In June 2007, the City hired White as its new chief of police. His employment was at will. On August 13, 2009, White was terminated as chief pursuant to the vote of the Ladue City Council. On September 18, 2009, and October 9, 2009, White made requests pursuant to the Sunshine Law for public records from the City. The City responded by requesting advance payments from White to produce the records, which included charges for attorney review time.

White made an additional Sunshine Law request for the City's liability insurance policy. The City produced its policy of insurance, issued by the Travelers Insurance Companies, Inc. The policy included a Public Entity Employment Practices policy and Form G0615, limiting the City's damages for torts to Missouri's statutory caps. At this time the policy provided to White did not include a Missouri Governmental Immunity Endorsement or "Form D0112," an endorsement preserving the City's sovereign immunity despite its purchase of a policy of insurance.

On March 22, 2010, White filed a lawsuit against the City, its mayor and council. White's petition alleged that he was discharged in violation of the public policy of the State of Missouri (Counts I through III). He further alleged that the City violated the Sunshine Law (Count IV).

On July 20, 2010, the trial court dismissed White's wrongful discharge claims (Counts I through III) against the mayor and council because they were not White's employer. White then filed an amended petition repeating his allegations against the City.

On March 9, 2011, the trial court issued an order requiring the City to produce "any monthly racial profiling reports in its possession for 2008–2009" by March 25, 2011. On March 25, 2011, the City represented to White that it had "no such documents in its possession," and produced annual reports instead. Three months later, the City supplemented its production with several of the requested monthly reports (May–December 2009). The trial court ordered the City and Regional Justice Information Services ("REJIS") to designate deponents to testify regarding the City's records. At the July 7, 2011 deposition of

the City's designee, the City produced monthly racial profiling reports to White, and the designee testified that these reports were received monthly by the City and stored electronically.

On August 16, 2011, White filed a motion seeking monetary sanctions for the City's failure to comply with the part of the order requiring it to produce monthly racial profiling reports. On January 23, 2013, the court denied White's first motion for sanctions.

On November 11, 2011, the City produced for the first time its 2009/2010 insurance policy that included Form D0112, the Missouri Governmental Immunity Endorsement applicable to the entire policy. On November 22, 2011, the City filed its second motion for summary judgment as to White's public policy wrongful discharge claims (Counts I through III) solely on the basis of sovereign immunity. White requested additional time to conduct discovery related to the production of Form D0112. The motion was granted by the trial court.

White conducted discovery related to Form D0112. The City objected to White's inquiry into communications among its attorney, the insurance broker and the insurance company's claims handler about Form D0112/sovereign immunity on the basis of the attorney-client and insurer-insured privileges. The trial court ordered that written communications about Form D0112 be produced for *in camera* review. The Court held that the attorney-client and insurer-insured privileges applied and limited White's inquiry about Form D0112 to the "timing of requests for and production of [Form D0112], as well as what efforts were made to look for said provision."

White deposed the City's attorney, insurance broker and third claims handler from Travelers Insurance, David Karamessinis ("Karamessinis"). During the depositions related to Form D0112, White learned that the original Travelers claims handler at the time of his lawsuit was David Heim ("Heim"). In order to depose Heim, White filed his second motion for additional time to conduct discovery and supplement his response to the City's second motion for summary judgment. White also filed a motion to strike the City's second motion for summary judgment on the grounds that privileges asserted by the City were being used in a fundamentally unfair way. The trial court denied White's motion to strike.

On April 11, 2012, the trial court entered its judgment granting the City's second motion for summary judgment as to White's public policy wrongful discharge claims on the basis of sovereign immunity, without ruling on White's second motion for additional time. In granting summary judgment, the trial court found that White produced no evidence that the certified copy of the insurance policy produced in November, 2011, was not a true and accurate copy of the policy, and therefore, there was no genuine dispute of material fact.

On October 2, 2012, White filed his amended third motion for sanctions pursuant to Rule 61.01(d),[1] seeking to recover over $140,000 in attorneys' fees. The trial court held a hearing and entered judgment denying White's motion because it did "not find the conduct of [d]efendant or its attorneys [rose] to the level appropriate to impose sanctions."

Both parties moved for summary judgment on White's Sunshine Law claim (Count IV). The trial court granted the City's and denied White's summary judgment motion. In entering judgment, the

1. All rule references are to Missouri Court Rules (2013), unless otherwise specified.

court found, as a matter of first impression, that attorney review time is not included in the "research time" that public bodies may charge for pursuant to section 610.026.1(1),[2] but held that the City's violations were not purposeful or knowing. White appeals.

## III. DISCUSSION[3]

### A. Motion to Dismiss—Point I

In his first point on appeal, White argues the trial court erred in dismissing his public policy wrongful discharge claims in Counts I through III of his original petition against the individual defendants (Ladue's mayor and city council members). Specifically, White contends that claims of wrongful discharge under the public policy exception to the employment-at-will doctrine should not be limited to the employer.

■ "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 768 (Mo. banc 2007). "It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Id.* This Court reviews such a dismissal *de novo*. *Id.*

■ In *Farrow v. Saint Francis Medical Center*, the Missouri Supreme Court stated, "a wrongful discharge cause of action requires an employer/employee relationship." 407 S.W.3d 579, 595 (Mo. banc 2013). Here, the City was undisputedly White's employer. Therefore, as White cannot establish an employer/employee relationship between himself and the individual defendants, the trial court properly dismissed his claims. Point I is denied.

### B. Summary Judgment—Points II, III, V and VI

In Points II and III, White claims the trial court erred in denying his pre-trial discovery requests, and, therefore, improperly granted summary judgment in favor of the City as to Counts I through III. In Point V, White argues that the trial court erred in granting the City's second motion for summary judgment as to his public policy wrongful discharge claims (Counts I through III). In Point VI, White contends that the trial court erred in granting summary judgment as to Count IV (Sunshine Law claim). These four points will be addressed individually below.

#### 1. Legal Standard

We review the entry of summary judgment de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Id.* Thus, "[t]he propriety of summary judgment is purely an issue of law." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

When reviewing a trial court's grant of summary judgment, this court views the

2. All further statutory references are to Revised Statutes of Missouri (RSMo) 2000, updated through the 2013 Cumulative Supplement.

3. In order to facilitate our discussion, we will address White's points in a different order than is presented in his brief.

record in the light most favorable to the party against whom summary judgment was entered. *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* at 381.

The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* at 376. However, "mere doubt and speculation do not create a genuine issue of material fact." *Martin v. City of Washington,* 848 S.W.2d 487, 492 (Mo. banc 1993).

A defendant moving for summary judgment "must demonstrate: (1) facts negating one or more elements of the [plaintiff's] claim; (2) that the [plaintiff] cannot and will not be able to prove one or more elements of [its] claim; or (3) that there is no material dispute about each fact necessary to establish an affirmative defense." *Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo. banc 2006). "Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381.

### 2. Point II

In his second point on appeal, White argues the trial court erred when it prohibited him from conducting discovery into communications regarding Form D0112 and sovereign immunity among the City's attorney, the City's insurance broker and the insurance company's claims handler on the basis of attorney-client and insurer-insured privilege. Specifically, White contends that he was improperly prevented from inquiring into substantive communications necessary to defend against the City's second motion for summary judgment because attorney-client and insurer-insured privileges did not apply to the communications at issue. We disagree.

When a party appealing the grant of summary judgment argues that he was improperly denied pre-trial discovery, the issue is two-fold: (1) should the requested discovery have been allowed, and (2) if allowed, would it have produced evidence sufficient to defeat the motion for summary judgment? *See Bost v. Clark,* 116 S.W.3d 667, 673 (Mo.App. W.D.2003). Concerning the first inquiry, "[t]rial courts have broad discretion in administering rules of discovery, which this Court will not disturb absent an abuse of discretion." *State ex rel. Crowden v. Dandurand,* 970 S.W.2d 340, 343 (Mo. banc 1998). A trial court abuses its discretion when its ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Mello v. Giliberto,* 73 S.W.3d 669, 673–74 (Mo.App. E.D.2002) (internal quotations and citation omitted). As to the second question, if the discovery requested was not likely to produce evidence sufficient to defeat the City's second motion for summary judgment, the failure of the trial court to grant the requested discovery was harmless error. *See Bost,* 116 S.W.3d at 673.

White motioned the court to compel production of communications among the City's attorney, insurance broker, and claims handler concerning sovereign immunity. The court ordered that written communications about Form D0112 be produced for *in camera* review. The court

ruled that the attorney-client and insurer-insured privileges applied, but that White could "inquire as to the timing of requests for and production of [D0112], as well as what efforts were made to look for said provision."

■■■ We first address the propriety of the court's denial of White's request to discover communications regarding Form D0112. In Missouri:

> The attorney-client privilege attaches to: (1)[i]nformation transmitted by voluntary act of disclosure; (2) between a client and his lawyer; (3) in confidence; (4) by a means which, so far as the client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted.

*State v. Longo,* 789 S.W.2d 812, 815 (Mo. App. E.D.1990). In *State ex rel. Cain v. Barker,* the Missouri Supreme Court recognized an insurer-insured privilege as a variant of the attorney-client privilege. 540 S.W.2d 50, 53 (Mo. banc 1976). The privilege covers, and excludes from discovery, "[a]ny communication between insured and insurer which relates to the former's duty to report incidents and the latter's duty to defend and to indemnify." *Ratcliff v. Sprint Missouri, Inc.,* 261 S.W.3d 534, 548 (Mo.App. W.D.2008).

■■■ Here, the requested communications regarding sovereign immunity and Form D0112 took place among the City's attorney, broker and claims handler. The communications relate to White's wrongful discharge claims, the City's potential liability for the claims, and the insurer's duty to defend them. As such, they pertain to the provision of legal services and are privileged.

■■■ Furthermore, we do not find that the discovery requested by White was *likely* to produce evidence sufficient to defeat the City's second motion for summary judgment. White argues that *if* these communications showed that Form D0112 was not part of the City's 2009/2010 insurance policy when issued, then summary judgment would be improper. However, White offers no evidence beyond this speculative statement, nor does the record reflect any, showing that the requested discovery would have likely led to evidence showing a genuine issue of fact with respect to Form D0112's inclusion in the 2009/2010 policy. Additionally, we note White was allowed to depose the City's attorney, broker and claims handler regarding "the timing of requests for and production of [Form D0112], as well as what efforts were made to look for said provision." All three individuals testified or executed an affidavit that the immunity endorsement was always part of the policy.

As such, even if we were to assume, *arguendo,* that the trial court erred in failing to compel the requested discovery, it was at best harmless error with respect to the court's granting of the City's second motion for summary judgment.[4] Point II is denied.

### 3. *Point III*

■■■ In his third point on appeal, White claims that the trial court erred in denying his second motion for additional time to conduct discovery and supplement his response to the City's second motion for summary judgment. Specifically, White

---

4. White alternately argues that even if the communications were covered by the attorney-client and insurer-insured privilege, the privileges were waived by the City. As we have found that even if the court's failure to compel production of the communications was erroneous, it was harmless error with respect to the court's grant of summary judgment, we need not reach this additional argument.

448

contends that in not granting his motion the court erred by preventing him from deposing Heim, the claims handler at the time the lawsuit was filed, and requiring White to respond to the City's second motion for summary judgment without the benefit of Heim's deposition testimony. We disagree.

■ "The trial court has discretion to grant or deny additional time to depose a witness before ruling on a pending summary judgment motion." *Adams v. City of Manchester*, 242 S.W.3d 418, 427 (Mo.App. E.D.2007) (citing *Chouteau Auto Mart, Inc. v. First Bank of Missouri*, 91 S.W.3d 655, 659 (Mo.App. W.D.2002)). Rule 74.04(f) governs the procedure for continuing summary judgment and "'contemplates that the opponent to the motion for summary judgment must call the court's attention to the uncompleted discovery and show by affidavit why it is material and important for the discovery to be completed.'" *Id.* (quoting *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App. E.D. 1993)). A party seeking a continuance must file an affidavit supporting its motion and "'must specify what additional evidence supporting the existence of a factual dispute the movant would have presented to the court if the court had continued the hearing.'" *Id.* (quoting *Binkley*, 10 S.W.3d at 173). "Absent a showing that additional discovery would have shown the existence of any genuine issue of material fact, a trial court does not err or abuse its discretion in refusing a request for a continuance to permit discovery prior to ruling on a summary judgment motion." *Id.*

The City produced the immunity endorsement/Form D0112 to White on November 11, 2011. On November 22, 2011, the City filed its second motion for summary judgment. White requested additional time to conduct discovery, which the court granted. White conducted depositions two months later. During these de-

positions, White learned that Heim was the claims handler at the time his lawsuit was filed. On March 12, 2012, the same day his response was due to the City's second motion for summary judgment, White filed his second motion for additional time in order to depose Heim and supported his motion by affidavit. White's motion was called, heard, and submitted. The court entered judgment granting the City's second motion for summary judgment without ruling on White's second motion for additional time to conduct discovery.

Here, in White's supporting affidavit, he stated: "[p]laintiff believes that the deposition of Mr. Heim is necessary to fully respond to the City's Second Motion for Summary Judgment and to determine the authenticity of the policy of insurance the City now relies upon...." Under Rule 74.04(f), it is not sufficient for White to speculatively claim that the deposition "is necessary." White's affidavit fails to show that additional discovery will likely establish a genuine issue of material fact as to the policy's authenticity. *See Adams*, 242 S.W.3d at 427 ("The affidavit must do more than allege further discovery might provide the necessary evidence; rather, it must describe the evidence.").

Moreover, we find no prejudice in the court's implicit denial of White's motion. White took depositions of the City's attorney, insurance broker, and claims handler—none of which revealed evidence contradicting the authenticity of the policy. White does not establish that Heim's testimony will differ. *See Binkley*, 10 S.W.3d at 173 (holding that there was no abuse of discretion where the plaintiff could not establish prejudice as he had deposed other individuals and there was "no indication" that the individual plaintiff requested to depose would have contradicted their testimony).

Our review of the record shows that White had ample time to discover Heim's identity, but served no written discovery requests on individuals with knowledge of Form D0112 and waited two months to conduct depositions. Then, White filed his second request for a continuance on the date his response was due to the City's second motion for summary judgment. *See Adams*, 242 S.W.3d at 427 (finding no abuse of discretion where the plaintiff failed to serve written discovery requests upon defendants and motioned the court for the continuance in close proximity to the trial date). We find that White had adequate opportunity to respond to the production of Form D0112.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying White's second motion for additional time to conduct discovery. Point III is denied.

### 4. Point V—Wrongful Discharge Claims

In his fifth point on appeal, White contends that the trial court erred in granting summary judgment in favor of the City on his public policy wrongful discharge claims (Counts I through III) on the basis of sovereign immunity because a genuine issue of material fact exists as to whether Form D0112 was part of the City's 2009/2010 insurance policy. Specifically, White maintains that the trial court: (1) improperly made a credibility determination in support of summary judgment; and (2) overlooked additional evidence showing that Form D0112 was not part of the

City's insurance policy when his lawsuit was filed.[5] We disagree.

Termination of a city employee is a government function for which the city has sovereign immunity from all tort liability. *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. banc 2006). A municipality can specifically waive its immunity. *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 414 (Mo.App. E.D.2008). Although section 537.610 provides for the waiver of sovereign immunity by operation of law upon the purchase of insurance covering tort claims, "the extent of that waiver is expressly dictated, and limited, by the terms of the insurance policy." *Id.* at 414–15. "A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity." *Langley v. Curators of the Univ. of Mo.*, 73 S.W.3d 808, 811 (Mo.App. W.D.2002).

On November 22, 2011, the City moved for summary judgment on grounds of sovereign immunity with regard to White's claim that the City wrongfully terminated him on August 13, 2009. In support of its motion, the City included a certified copy of its insurance policy effective May 5, 2009. This policy contained Form D0112 a Missouri Governmental Immunity Endorsement.[6] The City also offered an affidavit from the third claims handler, Karamessinis, confirming the policy's authenticity. Karamessinis attested that the City's policy contained the

---

5. White also argues that the trial court erred in granting summary judgment because it improperly prevented him from discovering and presenting evidence as set forth in his second and third points. We reject this argument for the reasons given in our discussion of Points II and III above.

6. Form D0112 states: "Your purchase of this policy isn't a waiver under Missouri Revised Statute Section 537.610 or any of its amendments; or Missouri Revised Statute Section 71.185 or any of its amendments; of sovereign or governmental immunity of any protected person for tort liability."

immunity endorsement at the time it was issued, on May 5, 2009.

White deposed the City's attorney and the City's insurance broker, who both testified that the endorsement was in the 2009/2010 policy. The City's attorney also testified that in the spring of 2010 he requested the insurance policy from the broker, who gave him the Employment Practices Liability portion of the policy and an endorsement related to the statutory caps on damages, but not Form D0112. The broker admitted during his deposition that he "screwed up" and mistakenly failed to send Form D0112. Karamessinis testified that he was assigned to the City's file in September of 2011, retrieved an electronic copy of the policy, which included the immunity endorsement, and forwarded it to counsel. The City's attorney testified that, after receiving the policy from Karamessinis, he confirmed that the binder contained in the City's safe also contained the immunity endorsement.

In granting summary judgment, the trial court found that White produced no evidence that the certified copy of the insurance policy was not a true and accurate copy of the policy, and therefore, there was no genuine dispute of material fact. The court further held that creating a genuine issue of fact would require "evidence Defendant, and those in league with it, have affirmatively defrauded Plaintiff and the Court."

■■■ As to White's first argument, that the court improperly weighed the credibility of "conflicting affidavits," we do not find that Karamessinis's affidavit, confirming the authenticity of the policy containing the immunity endorsement, conflicts with an earlier affidavit of Michael Woolridge, the City's clerk. Woolridge's affidavit does not specifically address Form D0112,

or the authenticity of the policy itself. Instead, Woolridge's affidavit is confined to stating that the City's answers to White's interrogatories "are true and correct, according to the best of my knowledge, information, and belief." The City produced a copy of the insurance policy without Form D0112 pursuant to White's interrogatories, but as noted above, the broker testified that he had mistakenly provided the City an incomplete version of the policy. We also note that the City reserved the right to supplement its responses to White's first interrogatories, and it supplemented its responses by later producing Form D0112. As such, we find that Woolridge's affidavit, verifying the City's responses, does not conflict with the City's later production of D0112 or with Karamessinis's affidavit. As the affidavits do not conflict, the trial court did not make an improper credibility determination.

White's second argument on this point is that the trial court overlooked additional evidence showing that Form D0112 was not part of the City's insurance policy when his lawsuit was filed. We do not find that White has provided evidence demonstrating that the authenticity of the City's immunity endorsement is genuinely disputed. White contends that the trial court failed to consider the following evidence contradicting the certified copy of the policy including Form D0112 and Karamessinis's affidavit: (1) the insurance broker's failure to find the endorsement when he initially sent the policy to the City's attorney; (2) the City's failure to produce Form D0112 in response to White's Sunshine Law request and during discovery; (3) that Form D0112 was not difficult to find as it was the second form indexed in the policy; (4) that there was no sovereign immunity endorsement in the City's 2006 and 2007 policies;[7] and (5) the fact that

---

7. White does not argue that the endorsement was not part of the policy in 2008, the year

immediately preceding the applicable coverage period for his lawsuit.

various communications took place concerning sovereign immunity among the City's attorney, insurance broker, original claims handler and outside counsel.[8]

However, even in a light most favorable to White, the facts he presents do not refute the certification of the policy and the affidavit as to its authenticity. White does not provide "affidavits, depositions, answers to interrogatories, or admissions on file" to demonstrate the existence of a genuine issue as to whether Form D0112 was part of the City's insurance policy in 2009/2010. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Evidence that the City's attorney communicated numerous times with the insurance broker, claims handler and outside counsel does not constitute evidence that the City defrauded the court and White. Further, even if Form D0112 was easily located, the insurance broker conceded under oath that he "screwed up" and gave an incomplete version of the policy to the City, which was produced to White. White offers no evidence to the contrary. At most, White relies on speculation to controvert evidence that the immunity endorsement existed, and he does not create a *genuine* issue of material fact. " 'Genuine' implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. Point V is denied.

### 5. Point VI—Sunshine Law Claim

White's sixth point states the trial court erred in granting summary judgment as to Count IV—his Sunshine Law claim—as the preponderance of evidence showed that the City purposefully or knowingly violated the Sunshine Law when it charged White for attorney review time that it was not obligated to pay to its attorney pursuant to the parties' contract. Specifically, White argues that the City was not obligated to pay its attorney for review time because under the contract between the parties, the only legal services that could be billed separately to the City were those associated with litigation or threatened litigation. Furthermore, White contends that even if attorney review charges were deemed associated with litigation and separately billable under the contract, the City's request for $250 per hour of review time exceeded the *actual* contractual rate of $150 per hour and constituted a knowing, purposeful violation. We disagree.

The Sunshine Law provides that "each public governmental body shall ... upon request, furnish copies of public records ..." Section 610.026.1. A public governmental body is permitted to charge for copying costs for public records, the time spent by clerical staff duplicating the requested records, and the "actual cost of research time" related to the fulfilling of record requests. *See* section 610.026.1(1). Section 610.027 authorizes the trial court to impose costs and attorney's fees upon a public governmental body that *knowingly or purposely* violates the Sunshine Law. Public governmental bodies that *knowingly or purposely* violate the Sunshine Law are subject to civil penalties. Section 610.027.

To purposely violate the Sunshine Law, a "public governmental body must exhibit a conscious design, intent, or plan to violate the law and do so with awareness of the probable consequences." *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998) (internal quotations omitted). Furthermore, "[e]ngaging

---

8. In his statement of additional material facts, White notes that many of these communications were deemed privileged. Nevertheless, White argues the fact that they *took place* supports an inference that the policy did not contain the immunity endorsement when issued.

in conduct reasonably believed to be authorized by statute does not amount to a purposeful violation." *R.L. Polk & Co. v. Missouri Dept. of Revenue*, 309 S.W.3d 881, 886 (Mo.App. W.D.2010) (internal quotations omitted). A federal district court interpreting Missouri law has held that to establish a "knowing" violation of the Sunshine Law, a plaintiff must show that that the defendant had "actual knowledge that the conduct violated a statutory provision." *Wright v. City of Salisbury, Mo.*, No. 2:07CV00056, 2010 WL 2947709, at \*5 (E.D.Mo. July 22, 2010) (emphasis omitted).

In response to White's September 18, 2009, and October 9, 2009 Sunshine Law requests,[9] the City advised him that advance payment would be required for research time, copying costs, and attorney review time. In its September 22, 2009 response to White's initial request, the City stated that it required advance payment of $2,500 for 10 hours of attorney review time billed at the rate of $250 per hour. In its October 14, 2009 response, the City stated that it required advance payment of $3,000 for 20 hours of attorney review time at a rate of $150 per hour. Both of the City's responses indicated that the advance payments requested were estimates, and that the City would keep track of the actual time spent, and refund to White any excess paid in advance. The contract at issue here, between the City and its attorney, states that basic services are covered by a monthly retainer and the only services separately billable, at a rate of $150 per hour, are those associated with litigation or threatened litigation.

■ White did not remit advance payment to obtain the records. In filing his petition, White alleged in Count IV that the City violated the Sunshine Law by improperly requesting payment for attorney review time. Both parties moved for summary judgment on the Sunshine Law claim and the trial court granted the City's motion. Although the trial court found as a matter of "first impression" that the City committed a violation of the Sunshine Law by requesting payment for attorney review time,[10] it concluded as a matter of law that it had not done so knowingly or purposefully, and thus no sanctions were warranted.

■ We do not find that the City charged White in advance for review time it was not obligated to pay. White's Sunshine requests relate to future litigation and, therefore, attorney review time is separately billable and represents an actual cost to the City. Additionally, we do not find that the hourly rate charged by the City reflects an attempt to recover more than the actual cost. Although the rate charged by the City for review time ($250) in its September 2009 response exceeded the express contractual amount ($150), the City's October 2009 response correctly stated the contractual rate. Furthermore, the letters requesting advance payment

---

9. White's October 9, 2009 letter included the same information requested in his September 18, 2009 letter and requested several additional documents.

10. We note that neither White nor the City has challenged the trial court's ruling that attorney's fees may not be charged as research time under the Sunshine Law. *The St. Louis Post–Dispatch* has filed an amicus curiae brief with this Court, urging that "allowing parties to charge for costs incurred for attor-

neys reviewing Sunshine Law [requests] ... undermines the purpose of the statute." However, as this issue is not raised in the instant appeal, we decline to address it. *See Robert Williams & Co., Inc. v. State Tax Comm'n of Missouri*, 498 S.W.2d 527, 530 (Mo. banc 1973) ("Amicus curiae cannot inject new issues into the case and the court will not pass on contentions urged by an amicus curiae but not presented by the parties.").

clearly indicate that the charged amount was an *estimate,* and would be adjusted to reflect *actual* costs of producing the records.

As such, the contract with the City's attorney does not provide a basis for concluding the City knowingly or purposely violated the statute. White cannot establish an element of his claim, and we affirm the grant of summary judgment. Point VI is denied.

## C. Point IV

In his fourth point relied on, White argues that the trial court erred in denying his motion to strike the City's second motion for summary judgment because the City's assertion of attorney-client and insurer-insured privileges was fundamentally unfair. We note that White cites no authority for his proposition that a motion for summary judgment may be struck because of the invocation of attorney-client and insurer-insured privileges. Furthermore, White contends that cases—in which invocation of the Fifth Amendment privilege gave rise to an adverse inference against the party claiming its benefits in a civil action—are analogous. However, we do not find his analogy persuasive as the cases cited by White do not involve a motion to strike a motion for summary judgment. Point IV is denied.

## D. Point IX

In White's ninth point, he claims the trial court erred in failing to order the City to produce certain documents he contends are relevant to his public policy wrongful discharge claims (Counts I–III). Specifically, White requests that "[i]f this Court should reverse the trial court's dismissal of Counts I–III or grant of summary judgment," that the Court "determine whether he is entitled to information that would support his claims that he was fired in violation of the public policy of State of Missouri."

White does not identify the challenged ruling or action by the trial court in support of his claim of error as required by Rule 84.04(d). Rule 84.04(d) requires every point relied on to contain three components: (1) a concise statement of the challenged ruling of the trial court; (2) the rule of law which the court should have applied; and (3) the evidentiary basis to support the application of that rule of law. Rule 84.04(d); *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). If a point does not set forth what trial court ruling is challenged, it does not preserve anything for review on appeal. *Thummel,* 570 S.W.2d at 685; *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo.App. E.D.1999). We therefore find that White has not preserved this point on appeal. Point IX is denied.

## E. Point VII

In his seventh point on appeal, White argues that the trial court erred when it denied his first motion for sanctions. Specifically, White contends the evidence showed that the City violated the court's March 9, 2011 discovery order when it failed to produce monthly racial profiling reports and the court did not find the City's conduct was substantially justified or that other circumstances would make the imposition of sanctions unjust. We disagree.

Trial courts are vested with discretion about whether to impose sanctions for discovery violations, and the exercise of that discretion will not be disturbed on appeal unless it is exercised unjustly. *See Sher v. Chand,* 889 S.W.2d 79, 82 (Mo.App. E.D. 1994). On appeal, our task is to determine whether the trial court could have reasonably concluded as it did, and not to determine whether we would have imposed the same sanctions under those circumstances. *See Green v. Fleishman,* 882 S.W.2d 219, 222 (Mo.App. W.D.1994). "We may dis-

turb the trial court's discovery sanctions decision 'only upon a clear showing of abuse of discretion.'" *Fairbanks v. Weitzman,* 13 S.W.3d 313, 327 (Mo.App. E.D. 2000) (quoting *Zerjav v. Schneider,* 998 S.W.2d 44, 45 (Mo.App. E.D.1999)). "'Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 648 (Mo. banc 1997)).

■ We find no abuse of discretion. Although the City did not produce the monthly racial profiling reports to White by March 25, 2011, pursuant to the court's order, it did produce annual reports, which contained the information in a different format, and it also later turned over several months of the profiling reports (May–December 2009). Also, approximately three months after the court's deadline, the City produced the requested reports to White. Therefore, as efforts were made to provide the requested information, and it was ultimately produced, we conclude that the trial court could have reasonably found that under the circumstances the imposition of sanctions was not required.

■ Furthermore, we are not persuaded by White's contention that the trial court abused its discretion because the court did not specifically find the City's conduct was substantially justified or that other circumstances would make the imposition of sanctions unjust. White cites no case law in support of his proposition that the court was required to make such a finding in compliance with Rule 61.01(d). The Rule itself states:

> If a party fails ... to produce documents and tangible things as requested under Rule 58.01, the court *may,* upon motion and reasonable notice to other parties, make such orders in regard to

the failure as are just *and among others* the following: ...

> (4) An order requiring the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Rule 61.01(d) (emphasis added). The language of the Rule clarifies that the court *may* sanction the failure to produce documents by awarding expenses. Thus, the imposition of sanctions was *discretionary,* and the court, having already determined the alleged violation did not warrant sanctions, need not have further examined whether an award of expenses should be excused as it was unjust or the failure was substantially justified. As such, we find the trial court did not abuse its discretion in denying White's motion for sanctions. Point VII is denied.

### F. Point VIII

■ In his eighth point on appeal, White claims the court erred in denying his amended third motion for sanctions. Specifically, White argues that the court abused its discretion because the evidence showed that the City failed to produce Form D0112 until November 11, 2011. We disagree.

As stated in section E above, relating to Point VII, this Court will disturb the trial court's discovery sanctions decision only upon a clear showing of abuse of discretion. *Fairbanks,* 13 S.W.3d at 327. Here, the court held a hearing on White's amended motion and stated in its ruling that it did not find that "the conduct of the [City] or its attorneys [rose] to the level appropriate to impose sanctions."

Upon review of the record, we do not find the court abused its discretion in denying White's motion. The City's insur-

ance broker testified under oath that he "screwed up" and provided an incomplete version of the policy. When the insurance company's third claims handler was assigned the file and discovered that Form D0112 was included in the 2008/2009 policy, White was promptly notified. Moreover, the record does not show that the City deliberately delayed production of the immunity endorsement. Nor would a purposeful delay make sense as Form D0112 provided the City a basis for summary judgment. As there is no evidence in the record of willful delay or deliberate misconduct by the City, the court's denial of White's severe requested sanction of over $140,000 in attorney's fees is not arbitrary or unreasonable. Point VIII is denied.

### IV. CONCLUSION

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J. concurs.