

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **ELAD GROSS,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD83061** |
| | ) | |
| **v.** | ) | **OPINION FILED:  May 26, 2020** |
| | ) | |
| **MICHAEL PARSON, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Division Two:  Mark D. Pfeiffer, Presiding Judge, Alok Ahuja, Judge and
Gary D. Witt, Judge

Elad Gross ("Gross") appeals from the Circuit Court of Cole County's entry of judgment on the pleadings against Gross and in favor of Governor Michael Parson ("Governor Parson") and Michelle Hallford ("Hallford") (collectively "Governor's Office").[1]  Gross raises ten allegations of error.  We reverse and remand for further proceedings.

---

[1] Hallford was named as a party in her capacity as the custodian of records for the Governor's Office. Further, although not named a party, Christopher Limbaugh, General Counsel to Governor Parson sent multiple communications to Gross, and as a member of Governor Parson's staff, we also include him in our designation of the "Governor's Office" for clarity and ease of reference.

# Statement of Facts[2]

This litigation surrounds two separate requests for public records under Section 610.010 *et. seq.* (commonly referred to as Missouri's "Sunshine Law") sent by Gross to the Governor's Office.[3] On August 18, 2018, Gross sent the Governor's Office a request for public records under the Sunshine Law ("First Sunshine Request") seeking "[a]ny and all records, communications, documents, emails, reports, and other material" sent from the Governor's Office or received by the Governor's Office from twenty-seven named individuals or entities after January 9, 2017.[4] Gross asserts that these individuals and entities were associated with "dark money"[5] contributions. At the conclusion of the request, Gross wrote:

> I request that the records responsive to my request be copied and sent to me at the following address:
>
> [Gross's Address]
>
> Where records are transmittable electronically, I request records responsive to my request be sent to [Gross's email] or by CD-ROM at the address above.
>
> I request that all fees for locating and copying the records be waived. The information I obtain through this request will be used to determine whether specific organizations and individuals violated federal and Missouri laws governing political campaigns. This request is in the public interest due to its law enforcement purpose and because it will reveal whether specific nonprofit organizations are violating Missouri's consumer protection laws

---

[2] "The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well pleaded facts in the opposing party's pleadings." *Anderson v. Crawford*, 309 S.W.3d 863, 866 (Mo. App. W.D. 2010) (quoting *Armstrong v. Cape Girardeau Physician Assocs.*, 49 S.W.3d 821, 824 (Mo. App. E.D. 2001)). Because the Governor's Office moved for judgment on the pleadings, we assume for purposes of this appeal that all well-pleaded facts in Gross's petition are true.

[3] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri, as updated through the 2019 Supplement.

[4] Most of this period of time covered by First Sunshine Request was during the term of previous Governor Eric Greitens, January 9, 2017-June 1, 2018.

[5] Gross defined "dark money" as "anonymous campaign contributions [made] to circumvent Missouri campaign finance laws and influence Missouri government and policy."

and whether legislation is needed to provide transparency in government for the people of Missouri.

Please let me know in advance of any search or copying if the fees will exceed $100.00.

On August 23, 2018, the Governor's Office responded to Gross's First Sunshine Request stating that the Governor's Office was "in the process of gathering the records that are responsive to your request and anticipate that we will be able to provide a response or cost estimate (if applicable) for the records you have requested in approximately one month."

On September 21, 2018, the Governor's Office sent a second letter to Gross that stated in relevant part:

> We have found 13,659 documents that may be responsive to your request. The estimated cost for providing these records is $3618.40 (please see enclosed invoice). Before we begin preparing the information, please forward to this office a check in that amount . . . . Once we receive this amount we estimate that it will take at least 120 business days to complete this request. We will send the records to you on a disk.

The enclosed invoice estimated that "research/processing" would take 90.46 hours charged at the rate of $40.00 per hour for a total of $3,618.40.

On September 24, 2018, Gross sent a response to the Governor's Office requesting that the Governor's Office waive its fees or explain why the Governor's Office was charging at the rate of $40.00 per hour instead of the clerical rate. In that letter, Gross asserted that he had no commercial interest in the requested documents. Gross sent another letter to the Governor's Office on September 24, 2018 ("Second Sunshine Request") requesting:

3

Any and all records, communications, documents, emails, reports, and other materials sent by or to Office of the Governor's staff, advisors, contractors, or other agents involving the Office of the Governor's response or plans to respond to [Gross's First Sunshine Request].

Gross requested the Governor's Office also waive any fees pertaining to his Second Sunshine Request stating the same rationale as in his First Sunshine Request.

On October 12, 2018, the Governor's Office responded to Gross's Second Sunshine Request which contained two sets of communications. Set A consisted of seventeen pages of documents with two pages partially redacted. Set B consisted of forty pages of documents, none of which were redacted. The Governor's Office waived all fees relating to the Second Sunshine Request.

On October 17, 2018, Gross filed his petition in the circuit court alleging that Governor Parson and Hallford violated the Sunshine Law ("Petition"). Gross brought eight counts titled: Count I-Violation of the Missouri Sunshine Law-First Request; Count II-Knowing Violation of the Missouri Sunshine Law-First Request; Count III-Purposeful Violation of the Missouri Sunshine Law-First Request; Count IV-Violation of the Missouri Sunshine Law Requiring Injunctive Relief-First Request; Count V-Violation of the Missouri Sunshine Law-Second Request; Count VI-Knowing Violation of the Missouri Sunshine Law-Second Request; Count VII-Purposeful Violation of the Missouri Sunshine Law-Second Request; Count VIII-Violation of the Missouri Sunshine Law Requiring Injunctive Relief-Second Request.

4

The Governor's Office filed its Answer and subsequently filed a Motion for Judgment on the Pleadings ("Motion"). The circuit court held a hearing on the Motion and on July 8, 2019, entered Judgment dismissing the Petition.[6] This appeal follows.

## Standard of Review

"When reviewing the trial court's grant of a motion for judgment on the pleadings, this Court must determine 'whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.'" *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 707 (Mo. banc 2015) (quoting *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 (Mo. banc 2012)). "The judgment[] will be affirmed if the facts pleaded by the plaintiffs, considered by the court as admitted, demonstrate that they could not prevail under any legal theory." *Id.* Furthermore, statutory interpretation is a question of law that we review *de novo*. *Bey v. Precythe*, 586 S.W.3d 781, 784 (Mo. App. W.D. 2019).

## Sunshine Law

The Sunshine Law dictates that state public policy is "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Section 610.011.1. The Sunshine Law "shall be liberally construed and [its] exceptions strictly construed to promote this public policy." *Id.* "Except as otherwise provided by law, . . . all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to

---

[6] "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable. An exception to this general rule applies, however, where the dismissal has the practical effect of terminating the litigation in the form cast by the plaintiff. A dismissal 'without prejudice' for failure to state a claim effectively bars a plaintiff from refiling the action in its original form. Thus, the trial court's dismissal effectively terminated the litigation; therefore, the dismissal is appealable, and we have the authority to review the points appealed." *State Conference of National Ass'n for Advancement of Colored People v. State,* 563 S.W.3d 138, 152 n. 4 (Mo. App. W.D. 2018)(internal quotation marks and citations omitted).

5

610.026[.]" Section 610.011.2. The parties do not dispute that the Governor's Office is a "public governmental body" as defined in section 610.010(4), and the parties agree that any records retained by the Governor's Office constitute "public record[s]" as defined in section 610.010(6). "Public records shall be presumed to be open unless otherwise exempt pursuant to the provisions of [Chapter 610]." Section 610.022.5. Furthermore, public records can fall into one of three categories: (1) those that cannot be closed and must be open to the public; (2) those that a public body has discretion to close but are open unless the public body takes affirmative action to close; and (3) those which are closed by statute or rule and cannot be disclosed under the Sunshine Law. *See* section 610.021(2) providing that records "approving a contract relating to the leasing, purchase or sale of real estate . . . shall be made public upon execution of the lease, purchase or sale of the real estate"; section 610.021(3) authorizing public bodies to close records related to employees' personal information when "[h]iring, firing, disciplining or promoting of particular employees"; section 610.035 prohibiting the disclosure of "any Social Security number of a living person unless such disclosure is permitted by federal law . . . ."

### Discussion

Gross asserts ten points on appeal alleging the circuit court erred in entering judgment on the pleadings in favor of the Governor's Office and against Gross. We address each in turn.

### Point One

In his first point on appeal, Gross argues the trial court erred in dismissing Gross's case because the Governor's Office abused its discretion by acting arbitrarily and

6

capriciously in denying Gross's request that the Governor's Office waive or reduce fees associated with Gross's First Sunshine Request in violation of the Sunshine Law, the Missouri Constitution, and the United States Constitution.

To properly raise a constitutional challenge, a party must:

(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Mayes v. Saint Luke's Hosp. of Kan. City*, 430 S.W.3d 260, 266 (Mo. banc 2014). Because Gross did not raise any constitutional challenges or cite to any constitutional provisions in his Petition or at any other point before the trial court, he has waived review of these constitutional claims. *See Creamer v. Banholzer*, 694 S.W.2d 497, 499 (Mo. App. E.D. 1985) ("A constitutional question must be raised at the earliest possible time consistent with good pleading and orderly procedure under the circumstances of a given case. Otherwise, it will be waived."). Although invoking the Sunshine Law in the language of Point One, the entirety of Gross's argument under Point One relies solely on his argument that the Governor's Office's actions in refusing to waive or reduce the fees were unconstitutional, a point he conceded during oral argument. As this challenge has been waived, Point One is denied.

**Point Two**

In his second point on appeal, Gross argues that the circuit court erred in entering judgment on the pleadings because under a proper interpretation of the Sunshine Law the

7

Governor's Office impermissibly charged attorneys' research fees[7] as a requirement to access public records related to the First Sunshine Request. The analysis of this point focuses on what fees a governmental body is entitled to assess pursuant to section 610.026 in providing records in response to a request under the Sunshine Law. "When interpreting a statute, our primary objective is to determine legislative intent based on the plain language of the statute." *Wyrick v. Henry*, 592 S.W.3d 47, 55 (Mo. App. W.D. 2019). When a statute does not provide an express definition, "statutory language is given its plain and ordinary meaning, as typically found in the dictionary." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018).

Section 610.026 governs what fees a public governmental body is authorized to charge when processing Sunshine Law requests given that public governmental bodies must arrange for access to and, upon request, furnish copies of public records to members of the public. Specifically, section 610.026.1(1) ("Subsection (1)") provides in relevant part:

> Fees for copying public records . . . shall not exceed ten cents per page for a paper copy not larger than nine by fourteen inches, with the hourly fee for duplicating time not to exceed the average hourly rate of pay for clerical staff of the public governmental body. Research time required for fulfilling records requests may be charged at the actual cost of research time. Based on the scope of the request, the public governmental body shall produce the copies using employees of the body that result in the lowest amount of charges for search, research, and duplication time.

and section 610.026.1(2) ("Subsection (2)") provides in relevant part:

---

[7] The pleadings never alleged the $40.00 per hour fee was for attorneys' research fees. However, both Gross and the Governor's Office concede this amount was for attorneys' fees. Paragraph 44 of the Petition, identifies Deputy General Counsel Jessie Eiler ("Eiler") as a member of the Governor's Staff making more than $40.00 per hour. Based on Exhibit 5, the Missouri Accountability Portal data, Eiler's salary equates to $44.27 per hour. It is unclear from the pleadings if there are other attorneys in the Governor's Office besides Christopher Limbaugh and Eiler or what their hourly rate would equate to as an hourly fee.

Fees for providing access to public records maintained on computer facilities, recording tapes or disks, videotapes or films, pictures, maps, slides, graphics, illustrations or similar audio or visual items or devices, and for paper copies larger than nine by fourteen inches shall include only the cost of copies, staff time, which shall not exceed the average hourly rate of pay for staff of the public governmental body required for making copies and programming, if necessary, and the cost of the disk, tape, or other medium used for the duplication.[8]

The statute treats traditional sized paper records (those nine inches by fourteen inches or smaller) in one fashion and separately from those maintained on computer or electronic medium or non-document records such as photographs, videotape, audiotape and larger documents like maps, which are more difficult to copy.[9]

In *R.L. Polk & Company v. Missouri Department of Revenue*, 309 S.W.3d 881, 883 (Mo. App. W.D. 2010), the Department of Revenue ("Department") attempted to collect a 3.82¢ flat per record fee. The Department argued that this was proper because Subsection (1) provided a statutory fee for paper copies, and that Subsection (2) allowed the Department to "set the per record fee for the types of records included in [Subsection (2)]." *Id*. at 885. However, this Court made clear that the treatment of records under Subsection (1) and Subsection (2) is distinct, when we held:

The legislature specifically chose to authorize a per record fee for paper copies in [Subsection (1)]. Similar language is conspicuously absent from [Subsection (2)], which imposes fee limitations for, among other types of records, records maintained on computer facilities.

---

[8] Neither party has alleged that any of the records in this matter fall within the provision of Subsection (2) regarding, "pictures, maps, slides, graphics, illustrations or similar audio or visual items or devices, and for paper copies larger than nine by fourteen inches" which could not be readily provided in an electronic format, and we limit our discussion of Subsection (2) to records provided in an electronic format.

[9] In this case there is nothing in the legal file to indicate that there are any materials responsive to the First Sunshine Request that would fall outside of either Subsection (1)'s traditional sized paper records or Subsection (2)'s computer or electronic medium records. For ease of reference, we will refer generally to "documents" when discussing records relevant to Subsection (1) and refer generally to "electronic records" when discussing records relevant to Subsection (2) and generically refer to the combined as "records."

*Id.* We continue to hold that the fee provision contained in Subsection (1) govern only those records enumerated in Subsection (1), and the fee provision contained in Subsection (2) govern only those records enumerated in Subsection (2).[10]

Gross's First Sunshine Request sought "any and all records, communications, documents, emails, reports, and other material"[11] sent or received by the Governor's Office and twenty-seven individuals and entities, and further states:

> I request that the records responsive to my request be *copied and sent to* me at the following address:
>
> [Gross's Address]
>
> Where records are transmittable *electronically*, I request records responsive to my request be sent to [Gross's email] or by CD-ROM at the address above.

(emphasis added). Because Gross requested both documents and electronic records, his request is not squarely governed by either subsection; therefore, Subsection (1) governs his request for documents maintained as paper records, even if those records are capable of being transmitted electronically, and Subsection (2) governs his request for electronically stored records. Because Gross's First Sunshine Request is potentially governed by both

---

[10] Subsection (1) contains two additional provisions that apply to all Sunshine requests regardless of the type of record requested. The estimation provision allows a requester to obtain an estimate of fees before completing their Sunshine request, and the waiver provision allows public governmental bodies to waive or reduce fees when the request is in the public interest.

The concurring opinion questions why this opinion addresses the recoverability of fees under Subsection (1) when the Governor's Office response to the First Sunshine Law request indicated that the records would be provided in an electronic format. Whether a record is governed by Subsection (1) or Subsection (2) depends not on the format in which the record is provided to the requester, but instead on how the public governmental body maintains its records. *See* Subsection (2) allowing "[f]ees for providing access to public records *maintained* on computer facilities . . . ." (emphasis added). The pleadings in this case do not establish the manner in which any of the requested records are maintained by the Governor's Office.

[11] On the record before us, it is unclear how many potentially responsive documents are paper communications consisting of letters, facsimiles, inter-office memoranda, or printed reports, etc. or how many responsive documents are electronic communications consisting of e-mails, text messages, etc. and how the records responsive to the request are maintained.

10

Subsection (1) and Subsection (2), we address the application of these subsections separately.

**Subsection (1)[12]**

Prior to its amendment in 2004, subsection 610.026.1(1) (2000) provided that fees for copying public records "shall not exceed the actual cost of document *search* and duplication." (emphasis added). The amended version of Subsection (1) allows a public governing body to assess charges for "*search, research,* and duplication time.*" (emphasis added). "When the General Assembly amends a statute, we must presume that its intent was to effect some change in the existing law." *State ex rel Pub. Counsel v. Pub. Serv. Comm'n of State*, 259 S.W.3d 23, 31 (Mo. App. W.D. 2008). We "should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act." *Id.* "To amend a statute and accomplish nothing from the amendment would be a meaningless act." *Id.*

The current statute does not provide an express definition for "research," but the dictionary provides two relevant definitions of "research": (1) "careful or diligent search:

---

[12] Both parties rely in part on *White v. City of Ladue*, 422 S.W.3d 439 (Mo. App. E.D. 2013) but disagree as to its holding. The Governor's Office asserts that *White* stands for the proposition that attorney's research fees are permissible, and Gross asserts that *White* stands for the proposition that attorney's research fees are impermissible. In *White*, a city charged a requester attorney research fees, and when the requester challenged the imposition of the fees, the trial court found that the "[c]ity committed a violation of the Sunshine Law by requesting payment for attorney review time[.]" *Id* at 452. On appeal, the court found that charging for attorney review time in and of itself was insufficient to find the city had knowingly or purposely violated the Sunshine Law. *Id*. at 452-53. Additionally, the *White* court wrote:

> We note that neither [the requester] nor the [c]ity has challenged the trial court's ruling that attorney's fees may not be charged as research time under the Sunshine Law. . . . [A]s this issue is not raised in the instant appeal, we decline to address it.

*Id*. at 452, n. 10. Because the Eastern District of this Court, declined to address the issue of the propriety attorney's fees as that issue was not before it, *White* is of no assistance to either party on this issue.

11

a close searching" and (2) "studious inquiry or examination; esp: critical and exhaustive investigation . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1930 (2002). Because the legislative amendment provides for both "search" and "research," we must presume the two words have different meanings. To find that "search" and "research" have the same meaning would render the amendment meaningless. Furthermore, we presume "each word, clause, sentence, and section of a statute will be given meaning and that the legislature did not insert superfluous language." *Macon Cty. Emergency Servs. Bd. v. Macon Cty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016). Therefore, "search" and "research" must have two distinct meanings, and "research" cannot mean "careful or diligent search." We conclude that "research" means the "studious inquiry or examination" of requested documents.

The Governor's Office argues that Section 610.021(14) authorizes a governmental body, in its discretion, to close certain "[r]ecords which are protected from disclosure by law" and therefore it is necessary to have an attorney review the records before they are disclosed. The Governor's Office also notes that various other statutes impose a legal duty on public governmental bodies to close specific records, or portions thereof, to protect individuals' privacy, rendering the closure of the records mandatory rather than discretionary. *See* section 32.057 (an individual's state tax information); section 191.656 (records relating to an individual's HIV status); section 210.846 (records of paternity proceedings); section 252.228 (hunting and fishing licenses); section 595.037 (claims made under the crime victims' compensation fund); and section 630.140 (records of certain mental health facilities). Furthermore, the Sunshine Law specifically provides that a

12

governmental body's attorneys' work product is a closed record and also prohibits the disclosure of individual's Social Security numbers. Section 610.021(1); section 610.035; *see also State ex rel. Moore v. Brewster*, 116 S.W.3d 630 (Mo. App. E.D. 2003) (holding that an attorney report was a closed record as legal work product). The Governor's Office argues in light of these statutory duties placed on a governmental body that the legislature intended to allow the governmental body the discretion to assess costs for both "search" and "research" to cover the costs associated with not only locating specific documents but also costs associated with reviewing those documents to ensure governmental bodies do not disclose information exempt from disclosure under the law. Therefore, the Governor's Office argues Subsection (1) allows for attorney research time to determine and classify documents as "open" or "closed" prior to disclosure.

The Governor's Office asserts that the inherent nature of Gross's request involved communications between the Governor's Office and its legal representatives and that because the researcher would have to determine which documents were protected by attorney-client privilege and documents consisting of legal work product, an attorney was the appropriate individual to perform this research.[13] We find the Governor's Office argument as to the interpretation of Subsection (1) persuasive in regard to the discretionary authority to assess attorney research time in reviewing documents to determine if the document or any portion thereof is protected from disclosure pursuant to statute.

---

[13] The Governor's Office argues on appeal that some of the requested records involved communications between Governor Greitens and his legal representatives or his office's legal representatives. A review of the pleadings shows no support for this assertion at this stage of the proceedings. Nowhere in the Petition or Answer is there an allegation that any of these individuals were attorneys or that any attorney-client relationship existed between any of these individuals and anyone in Governor Greitens's office.

Subsection (1) requires "the public governmental body [to] produce the copies using employees of the body that result in the lowest amount of charges for search, research, and duplication time." Therefore, the public governmental body must limit its charges to the rate of the lowest paid employee within the class of employees conducting each of the tasks of search, research, and duplication. (i.e. When charging for attorney review, the public governmental body must charge at the rate of the lowest paid attorney, but when charging for clerical review, the public governmental body must charge at the rate of the lowest paid member of the clerical staff).

However, whether certain records responsive to the request fell under Subsection (1) and whether the Governor's Office used the lowest-paid personnel that could search for and subsequently analyze the documents to properly determine whether information was exempt or nonexempt is a question of fact that precludes a judgment on the pleadings.

**Subsection (2)**

While Subsection (1) specifically provides for "search, research, and duplication time," similar language is conspicuously absent from Subsection (2). Instead, Subsection (2) allows fees for "providing access to public records maintained on computer facilities . . . ." The term "access" is not expressly defined in the statute, but we note that many governmental bodies provide public computer terminals and/or publicly available websites that, in many cases, allow free and unlimited access to certain public records. The dictionary defines "access" as "freedom or ability to obtain or make use of[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 11 (2002). "Obtain" is further defined as "to gain or attain possession." *Id*. at 1559. Therefore, the General Assembly

14

provides for the discretionary assessment of fees associated with the activities necessary to give possession of electronic records to requesters. (i.e. the act of copying electronic records to disk, tape, or other medium for duplication).

Furthermore, those fees are limited to "include only the cost of copies, *staff time*, which shall not exceed the average hourly rate of pay for staff of the public governmental body required for making copies and programming . . . ." Section 610.026.1(2)(emphasis added).[14] In addition to staff time, Subsection (2) also provides for assessment of fees for programming, if necessary and under specifically delineated parameters, as well as the cost of the disk, tape, or other medium used for the duplication. *Id.* The statute does not provide a definition of "staff," and the dictionary defines "staff" as "the personnel responsible for the functioning of an institution or the establishment or the carrying out of an assigned task under an overall director or head." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2219 (2002). While we find that the Governor's General Counsel and his or her deputies are staff, we find that their research was unnecessary to providing Gross possession of the records.

In the same legislation that added the provisions for assessing fees for "research time" under Subsection (1), the General Assembly also amended Subsection (2). Prior to 2004, the relevant provision of Subsection (2) read, "shall include only the cost of copies, *staff time required for making copies* and programing, if necessary . . . ." (emphasis added). The language prior to the 2004 amendment was clear that it was only the *staff time required*

---

[14] Neither party argues on appeal that programming was necessary for the production of records pertaining to Gross's Sunshine requests. Therefore, we discuss only the "the average hourly rate of pay for staff of the public governmental body required for *making copies*." (emphasis added).

15

*for making copies* that was allowable under this Subsection (2). The legislature amended this subsection in 2004 to further limit the phrase "staff time required for making copies" by adding additional language limiting the amount charged for the staff time required for making the copies, "which shall not exceed the average hourly rate of pay for staff of the public governmental body[.]" While specifically allowing the public governmental body to charge for "research time" under Subsection (1), and specifically limiting the charges for the staff time making the copies under Subsection (2) in the same legislation, it would be inconsistent to hold that attorney research time is assessable under Subsection (2). The charge for staff time under Subsection (2) is limited to the amount of time staff needed to make copies or transfer electronic records at "the average hourly rate of pay for staff of the public governmental body required for making copies."

While a governmental body may desire or even believe it is required to have an attorney review certain electronic records before they are provided to a member of the public under the Sunshine Law, Subsection (2) makes no provision for "research" fees to be assessed to the requester. Instead, it provides for staff time for activities directly related to providing access to electronic records, and we "will not add words to a statute under the auspice of statutory construction." *Macon Cty. Emergency Svs. Bd.*, 485 S.W.3d at 355. We find no authority in the language of the statute in Subsection (2), for a governmental body to assess research fees or attorney fees to a requester of records covered under Subsection (2).[15]

---

[15] Gross argues that because public governmental bodies have a statutory duty to separate exempt and nonexempt material under the Sunshine Law, the public governmental body should bear the cost of making such determinations. Section 610.024.1 imposes a duty on public governmental bodies to "separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." Gross relies on

16

**Conclusion of Point Two**

Gross pled that the Governor's Office charged $40.00 per hour for "Research/Processing" of the First Sunshine Request and that "Ms. Goeller, who appears to have directed the search for documents, receives approximately $19 per hour" and both parties agree the $40 per hour rate was based on an attorney's time in processing the request for records.[16] Thus, Gross properly pled a claim that the Governor's Office charged an excessive rate in processing his First Sunshine Request.

Because the circuit court must determine which records were documents governed by Subsection (1) and which records were electronic records governed by Subsection (2), what fees were being assessed for each type of record, whether the Governor's Office assessed an improper fee as to each type of record, and if any fee was charged at an excessive rate, the circuit court erred in entering judgment on the pleadings as to the fees assessed for the First Sunshine Request.

Point Two has merit.

_____

*State ex rel. Missouri Local Government Retirement System v. Bill*, 935 S.W.2d 659, 664 (Mo. App. W.D. 1996) ("*Bill*"), for the proposition that forcing a plaintiff to bear the governmental body's expenses would effectively deny public access to documents. Specifically, *Bill* reasoned that:

> Not requiring the public governmental body to bear Bill's expenses would open a means for public governmental bodies to thwart the public policy underlying the [Sunshine Law]. The agency would be free to "test" the determination of anyone requesting its records by filing a lawsuit, putting that person in the dilemma of not defending his or her request in court or enduring the significant expense of doing so.

*Id.* at 666. The court found that the public governmental body "was obligated to pay all of Bill's *litigation expenses, including his reasonable attorney fees*." *Id.* (emphasis added). However, *Bill* is inapplicable to the instant case because *Bill* interpreted section 610.027.5 RSMo. (1994). The provision for attorneys' fees in this subsection serves to eliminate the requester's litigation expenses arising from challenges to the propriety of closing a record. This subsection does not address the imposition of attorney research fees on an original request for records and is therefore inapposite.

[16] Many requests for records under the Sunshine Law will not implicate the need for an attorney to take any action prior to the disclosure of the records. In this case, while it may have been appropriate or desirable for an attorney to review at least some of the records prior to their disclosure the pleadings do not allege that this in fact occurred.

17

**Point Three**

In his third point on appeal, Gross alleges the circuit court erred in entering judgment on the pleadings because Gross properly pled that the Governor's Office violated the Sunshine Law when it failed to provide Gross with the earliest time the requested records would be available. The Governor's Office responded to the First Sunshine Request as follows:

> We have found 13,659 documents that may be responsive to your request. The estimated cost for providing these records is $3618.40 (please see enclosed invoice). Before we begin preparing the information, please forward to this office a check in that amount, directed to the attention of Michelle Hallford, Custodian of Records, and made out to "State of Missouri – Governor's Office," [sic] Once we receive this amount we estimate it will take at least 120 business days to complete this request. We will send the records to you on a disk.

The Governor's Office argues that it complied with its statutory obligations when it stated: "that providing the documents would take at least 120 business days to complete" and that they may provide an estimate of time as a matter of law. Gross alleges that the Sunshine Law requires the public governmental body to provide an exact date of when the requested records will be made available.

Section 610.023.3 provides that:

> If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection.

The circuit court relied on *White* for the proposition that a public governmental body does not violate the Sunshine Law merely by providing an estimate of the time likely to be incurred in processing a request. However, *White* interpreted the portion of section 610.026.2, which provides for collection of estimated copying fees related to a request for

18

records under the Sunshine law before production of the records begins. 422 S.W.3d at 452-53. "[T]he City advised [White] that advance payment would be required for research time, copying costs, and attorney review time." *Id.* at 452. The City required advance payment for thirty hours for attorney review time totaling $5,500.00. *Id*. The Eastern District of this Court ultimately found, "the letters requesting advance payment clearly indicate that the charged amount was an *estimate*, and would be adjusted to reflect *actual* costs of producing the records." *Id.* at 452-53. *White* does not stand for the proposition that a public governmental body may provide an estimate of the date when the records will be made available, instead *White* interpreted section 610.026.2 to allow collection of estimated fees before the governmental body began production of the records.

Gross's First Sunshine Request included language that the Governor's Office should notify him "*in advance of any search or copying* if the fees will exceed $100.00." (emphasis added). Gross further pled that he requested the Governor's Office notify him how many records were responsive to each one of his separate requests within the First Sunshine Request, "so he could determine how to proceed." It is unclear how the Governor's Office was supposed to notify Gross of an exact date the records would be available, when on its face, the request required the Governor's Office to provide notice regarding the cost of production and the number of records responsive to each request *before* it began the process of copying and producing the records. At the point in time that the Governor's Office provided this notice, there was no way of knowing if Gross would decide to withdraw the request, limit the request in some fashion to reduce the estimated cost, or submit payment of the estimated cost at some unknown point in the future. Because the First Sunshine

19

Request on its face required further action on Gross's part before the Governor's Office could begin to respond to the request, there was no way it could provide him with a specific date on which the records would be available. The Governor's Office responded in the best way possible under these parameters set by Gross by providing an estimate of the amount of time it would take to produce the records once payment of the estimated cost was made and it was authorized by Gross to begin the process of searching for, copying, and producing the records.

Point Three is denied.

## Point Four

In his fourth point on appeal, Gross alleges the circuit court erred in entering judgment on the pleadings because Gross properly pled that the Governor's Office failed to provide Gross with a detailed explanation of why the Governor's Office required at least 120 business days to produce records sought in Gross's First Sunshine Request.

Section 610.023.3 requires a governmental body to act upon Sunshine requests "as soon as possible, but in no event later than the end of the third business day following the date the request is received by the custodian of records . . . . If access to the public record is not granted immediately, the custodian shall give a *detailed explanation* of the cause for further delay and the place and earliest time and date that the record will be available for inspection."

In Count I, Gross pled that "[the Governor's Office] failed to provide a detailed explanation of the causes for delay in producing the records as required by [section] 610.023.3." The Governor's Office responded to the First Sunshine Request as follows:

20

> We have found 13,659 documents that may be responsive to your request. The estimated cost for providing these records is $3618.40 (please see enclosed invoice). Before we begin preparing the information, please forward to this office a check in that amount, directed to the attention of Michelle Hallford, Custodian of Records, and made out to "State of Missouri – Governor's Office," [sic] Once we receive this amount we estimate it will take at least 120 business days to complete this request. We will send the records to you on a disk.

The response offers no detailed explanation as to why production would be delayed for at least 120 days other than the general statement as to the large number of records that may be responsive to the request.

The Governor's Office argues on appeal that the requested records included some documents that are attorney/client privileged and therefore require an attorney to review them before the records can be released. It further argues that the estimate of 120 days was based upon an attorney reviewing 150 documents per hours and spending 10% of the attorney's time each day on processing this request. However, the Governor's Office is bound by the explanation given in its response to the First Sunshine Request. That response did not provide the detailed explanation for the delay that the Governor's Office argues on appeal and in fact never mentioned that it believed an attorney was required to review the records or why it felt that was necessary based upon the records being requested. It further failed to state that the hourly rate of $40 per hour is based upon an attorney's time for reviewing the documents rather than clerical time. The detailed explanations the Governor's Office provide on appeal may have been sufficient to constitute a "detailed explanation" as a matter of law, but the statute requires that detailed explanation be provided to the party requesting the records in the response to the request. Section 610.023.3.

21

Therefore, Gross has sufficiently pled that the Governor's Office failed to provide the statutorily required "detailed explanation" for the delay beyond three business days in its response to the request for the records.

Point Four is granted.

## Point Five

In his fifth point on appeal, Gross alleges the circuit court erred in entering a judgment on the pleadings because Gross properly pled that the Governor's Office impermissibly redacted portions of records provided to Gross in response to Gross's Second Sunshine Request without explanation and without closing any records. Specifically, Gross pled that: "Despite not closing any records, [the Governor's Office] redacted portions of the records produced to [Gross]" and that redaction was improper.

In its response to the Second Sunshine Request, the Governor's Office provided no explanation or reason for the redaction of certain portions of the records. The redacted records were provided but the requesting party had no way of knowing why or on what authority the redactions were made. In its brief, the Governor's Office argues that Gross's Second Sunshine Request "clearly involved privileged and closed communications. . . . [O]n the face of the two pages at issue there is reference to the Attorney General, and two of the Governor's legal counsel are copied on the email." The Governor's Office relies on section 610.021(1), which provides for the permissive closure of records to the extent they relate to:

> Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representative and its attorneys.

22

However, not all communications between the Attorney General, the General Counsel, and members of the Governor's Office staff constitute privileged and closed communications under section 610.021(1).

In *Tuft v. City of St. Louis*, 936 S.W.2d 113, 119 (Mo. App. E.D. 1996), the Eastern District of this Court held that "in considering a record containing material found to be exempt under [section] 610.021(1), the issue presented is whether the [document] contains any material that does *not* 'relate to . . . (1) Legal actions, causes of actions or litigation involving a public governmental body . . . .'" The Court in strictly construing the exemption in favor of the requester, held that the onus is on the public governmental body to demonstrate that the redacted communications pertain to either ongoing litigation or potential litigation. *Id*. at 118 ("Where the justification offered is potential as opposed to pending litigation, the governmental body should properly bear a heavy burden of demonstrating both a substantial likelihood that litigation may occur and a clear nexus between the document sought and the anticipated litigation."). While on appeal the Governor's Office does not rely on the potential or pending litigation provisions of this section of 610.021, the analysis regarding the burden falling on the public governmental body to establish that the record should be closed is equally applicable to the attorney-client privileged communications exemption found in the same subsection upon which the Governor's Office relies on appeal.[17]

---

[17] The Governor's Office also argues that the trial court's judgment should be affirmed because Gross never requested the trial court to review the records *in camera* prior to ruling on the motion to dismiss. However, a motion to dismiss on the pleadings, is based solely on a review of the pleadings and it would be premature for Gross to have requested an *in camera* review at this early stage.

23

The Governor's Office provided no legal reason for the redaction in its response to the Second Sunshine Request. Furthermore, the circuit court has not reviewed the redacted material *in camera*. Therefore, the circuit court could not have engaged in the necessary review to determine if the redactions were permissible or impermissible under section 610.021(1). The Governor's Office bears the burden to establish that the redacted material fell within section 610.021(1) in that the Governor's Office must demonstrate the redacted portion of the records are protected as attorney-client privilege such that the communications would be permissibly closed to all requesters or if there exists any other statutory grounds for the portions of the records to be redacted.

Point Five has merit.

## Point Six

In his sixth point on appeal, Gross alleges the circuit court erred in entering a judgment on the pleadings because the circuit court improperly placed the burden on Gross to demonstrate noncompliance with the Sunshine Law when the Governor's Office bore the burden it complied with the Sunshine Law as it relates to Gross's Second Sunshine Request.

"Once a party seeking judicial enforcement of sections 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of [those sections] and has held a closed meeting, record or vote, the burden of persuasion shall be on the body and its members to demonstrate compliance with the requirements of [those sections]." Section 610.027.2. It is the public governmental body's burden to demonstrate compliance with the Sunshine Law after the requester satisfies its initial burden to

24

demonstrate that the body is subject to the Sunshine Law and the body has closed a record. *Laut v. City of Arnold*, 417 S.W.3d 315, 320 (Mo. App. E.D. 2013); *see Colombo v. Buford*, 935 S.W.2d 690, 694 (Mo. App. W.D. 1996).

In *Laut*, two requesters had personal relationships with employees of a city's police department and believed these employees had improperly accessed a law enforcement database to obtain the requesters' confidential records. *Laut*, 417 S.W.3d at 317. After bringing a formal complaint against the employees, the requesters made a sunshine request to the city requesting reports and records regarding investigations and communications about the employees' use of the database and any disciplinary action. *Id.* The city concluded the records responsive to the request were exempt from disclosure. *Id.* Even though the trial court did not review the closed records, it entered summary judgment against the requesters and in favor of the city finding that the records were exempt. *Id.* at 318. The Eastern District of this Court remanded "for the trial court to examine any public records containing information covered by [requester's] first two requests and to determine whether the City has met its burden under Section 610.027.2." *Id.* at 320-21.

Like in *Laut*, the circuit court erred in entering judgment on the pleadings against Gross and in favor of the Governor's Office because the circuit court did not review the redacted documents. Gross pled that the Governor's Office was a public governmental body subject to the Sunshine Law and that the Governor's Office redacted a portion of records pertaining to his Second Sunshine Request. The Governor's Office admitted both allegations in its answer. Therefore, there is no dispute that Gross has met his burden to submit a challenge to the redactions. The Governor's Office asserts that its redactions were

25

proper as attorney-client privileged communication, which are permissively exempt from disclosure under section 610.021(1). However, as discussed under Point Five above, just because a document included a communication from or to an attorney does not conclusively establish that it is a protected attorney-client communication.

The Governor's Office again argues that Gross had the burden to request an *in camera* review of the redacted materials. We disagree. The plain language of section 610.027.2 places the burden on the Governor's Office to prove it complied with the Sunshine Law, and in doing so, the subsection places the burden on the Governor's Office to request an *in camera* review of the redacted materials.[18] Because the circuit court did not review the redacted content, it cannot make a determination as to whether the challenged redaction was proper and such an *in camera* review would be premature on a Motion to Dismiss on the pleadings. Therefore, we find the circuit court erred in entering judgment on the pleadings as to this count.

Point Six is granted.

## Points Seven and Eight[19]

In his seventh point on appeal, Gross alleges the circuit court erred in entering a judgment on the pleadings because he properly pled the Governor's Office knowingly violated the Sunshine Law in processing his First Sunshine Request because Gross made the Governor's Office aware of the requirements of the Sunshine Law. In his eighth point,

---

[18] This opinion should not be construed to mean that a requester is prohibited from requesting an *in camera* review of closed records for the court to determine if the closure was proper.

[19] Because the analysis regarding knowing violations of the Sunshine Law is the same for Gross's First and Second Sunshine Requests, we address these points together.

Gross raises an identical argument regarding the Governor's Office treatment of his Second Sunshine Request.

Section 610.027.3 provides that:

Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has knowingly violated [the Sunshine Law], the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. . . . [T]he court may order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing a violation.

In *Laut*, the court held that "a knowing violation requires that the public governmental body had actual knowledge that the Sunshine Law required production but did not produce the document." 491 S.W.3d at 200; *see Strake v. Robinwood W. Cmty. Improvement Dist.*, 473 S.W.3d 642, 645 (Mo. banc 2015); *White*, 422 S.W.3d at 452. Therefore, to properly plead a public governmental body knowingly violated the Sunshine Law, a plaintiff must allege that: (1) the public governmental body had knowledge of the law; (2) the Sunshine Law required production of the requested document; and (3) the public governmental body did not produce the document.

**First Sunshine Request**

Regarding his First Sunshine Request, Gross alleged that "[the Governor's Office is] aware of the requirements of Missouri Revised Statutes Chapter 610," which the Governor's Office admitted in its answer. He further alleged that the requested records were "public records subject to disclosure under Missouri Revised Statutes Chapter 610." However, the facts pled in Gross's petition fail to satisfy the second requirement that the Sunshine Law required production of the requested records. As stated previously, the

27

Governor's Office has the statutory authority to require payment of estimated costs before it begins to produce records. Gross failed to pay the estimated cost, and therefore, the Governor's Office did not have a current obligation to produce the requested records. Furthermore, Gross instructed the Governor's Office not to begin production of the records if the cost would exceed $100.00 until Gross had authorized those expenses. Because Gross specifically directed the Governor's Office notify him in advance of producing any documents if the fees would exceed $100, he obviated any current obligation on the part of the Governor's Office to produce the records. Finally, Gross asserts a knowing violation of the Sunshine Law because the Governor's Office did not waive its fees. However, the Sunshine Law is clear that any waiver of fees is discretionary. These allegations are insufficient to demonstrate a knowing violation of the Sunshine Law as it pertains to the First Sunshine Request.

**Second Sunshine Request**

Regarding his Second Sunshine Request, the parties agree the Governor's Office was aware of the Sunshine Law's requirements and that the Governor's Office failed to produce the redacted portion of the records. Therefore, the issue is whether the redactions were proper or whether the Governor's Office had a duty to produce the redacted materials under the Sunshine Law.[20] The Governor's Office argues that it "properly made limited redactions of privileged and closed material on only two pages." The Governor's Office argues that the facts pled are insufficient to draw an inference the redactions were improper.

---

[20] There is nothing in the record to establish that Gross requested that the Governor's Office provide a written statement of the grounds for the redactions pursuant to Section 610.023.4.

28

However, Gross and the circuit court are incapable of determining whether the redactions were proper until the records have been inspected, particularly the redacted portion. Thus, construing the statute liberally in favor of public access, we find that when a plaintiff asserts that a redaction is improper that plaintiff has satisfied the pleading requirements of the second element (that the Sunshine Law required production of the requested document).

Because Gross has pled all three elements, he has properly pled a claim that the Governor's Office knowingly violated the Sunshine Law in regard to his Second Sunshine Request. Questions of fact must be resolved to determine whether the redactions in the Second Sunshine Request were permissible under section 610.021 or if Gross can factually establish at trial that the redactions were knowingly impermissible. We find that the circuit court erred in entering judgment on the pleadings, because Gross has sufficiently pled the Governor's Office has committed a knowing violation of the Sunshine Law in processing Second Sunshine Request. Whether the Governor's Office can meet its burden to establish that the redacted material is properly closed, and therefore not required to be produced under the Sunshine Law, is a factual question that cannot be determined at this point in the litigation.

Point Seven is denied, but Point Eight has merit.

29

## Points Nine and Ten[21]

In his ninth point on appeal, Gross alleges the circuit court erred in entering a judgment on the pleadings because he properly pled the Governor's Office purposely violated the Sunshine Law in processing his First Sunshine Request.

Section 610.027.4 provides that:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has purposely violated [the Sunshine Law], the public governmental body or the member shall be subject to a civil penalty in an amount up to five thousand dollars. . . . [T]he court shall order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing such a violation.

"To purposely violate the [Sunshine Law] a member of a public governmental body must exhibit a 'conscious design, intent, or plan' to violate the law and do so 'with awareness of the probable consequences.'" *Laut*, 491 S.W.3d at 199 (quoting *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998)). "[T]his is a far greater burden than required to prove a knowing violation, for to prove a purposeful violation the plaintiff must prove more than 'mere intent to engage in the conduct resulting in the violation[.]" *Id.* Because Gross failed to plead essential facts to demonstrate a knowing violation as it pertains to his First Sunshine Request, we need not address whether he pled essential fact to demonstrate the higher burden of establishing a purposeful violation.

However, because we find that Gross pled sufficient facts to allege a knowing violation of the Sunshine Law as it pertains to his Second Sunshine Request, we must

---

[21] Because the analysis regarding purposeful violations of the Sunshine Law is the same for Gross's First and Second Sunshine Requests, we address these points together.

address whether he pled the necessary facts to support an allegation of a purposeful violation of the Sunshine Law as it pertains to his Second Sunshine Request.

In *Claudia Lee and Associates v. Kansas City, Missouri Board of Zoning Adjustment*, 489 S.W.3d 802, 810 (Mo. App. W.D. 2016), a requester alleged a purposeful violation of the Sunshine Law averring that the Board of Zoning Adjustment ("Board") "failed to timely respond to [requesters'] proper sunshine request, and on belief, the [Board] failed to provide all of the documents requested . . . ." The requester further alleged it was prejudiced because of the Boards "vexious [sic] refusal to comply with the Missouri Sunshine Act." *Id.* We held that that these "bare statements" were insufficient to allege a purposeful violation. *Id.*

Gross alleges that the Governor's Office purposely violated the Sunshine Law "to avoid providing information pertinent to [Gross's] investigation into government corruption[, which] *could* affect the electability of [] Governor Michael Parson and [Senator] Josh Hawley." (emphasis added). However, Gross has not pled any facts to indicate that the Governor's Office was aware of the consequences, if any, of its redactions. Gross merely pled that Gross "has suffered delay in his investigation into corruption in Missouri government[] and has undertaken substantial costs to enforce Missouri's Sunshine Law." Gross does not plead any facts to indicate the Governor's Office was aware that its redaction would delay Gross's investigation nor has he plead that the Governor's Office was aware that Gross had incurred substantial costs pertaining to the Second Sunshine Request. In fact, the Governor's Office had voluntarily waived all fees related to the Second Sunshine Request, and Gross had not alleged he would pursue legal action in regard

31

to that request. Just as in *Claudia Lee and Associates*, we find that Gross's bare assertions are insufficient to allege a purposeful violation of the Sunshine Law as it pertains to the Second Sunshine Request. Therefore, the circuit court correctly entered judgment on the pleadings that Gross failed to adequately plead facts to demonstrate a purposeful violation of the Sunshine Law stemming from the processing of the Second Sunshine Request.

Points Nine and Ten are denied.

## Conclusion

We reverse and remand for further proceedings not inconsistent with this opinion.

_____
Gary D. Witt, Judge

Pfeiffer, Presiding Judge, joins in the majority opinion
Ahuja, Judge, concurs in separate opinion



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

ELAD GROSS, )
                 Appellant, )
                 )
v.                  )    **WD82860**
                 )
MICHAEL PARSON, et al.,   )    FILED: May 26, 2020
          Respondents.   )

## CONCURRING OPINION

I agree with my colleagues that the circuit court's grant of judgment on the pleadings to the Respondents must be reversed. I concur in all of the Court's opinion, except for its discussion of Gross' second Point (concerning whether the Governor's Office can recover charges for attorney time spent in responding to Gross' Sunshine Law request). Although I agree with the majority that the Governor's Office may be entitled to recover *some* charges for the time its in-house attorneys spend responding to a records request, my analysis of the issue follows a different route, and reaches a somewhat different conclusion.

I agree with the distinction which the majority draws between subsections (1) and (2) of § 610.026.1.[1] Consistent with our decision in *R.L. Polk & Co. v. Missouri Department of Revenue*, 309 S.W.3d 881, 885 (Mo. App. W.D. 2010), subsection (1) is most reasonably read to address the charges recoverable for producing paper records of less than 9x14 inches in size, while subsection (2) addresses the fees which may be charged for records maintained electronically, large-format paper

---

[1]       Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2019 Cumulative Supplement.

documents, and miscellaneous other records (such as maps, videotapes, and photographs).

Having drawn that distinction between subsections (1) and (2), however, it is unclear to me why the majority then goes on to address the recoverability of attorney's fees under subsection (1). The Governor's Office's response to Gross' first Sunshine Law request, which demanded that Gross pay the estimated cost of $3,618.40, specifically stated that "[w]e will send the records to you on a disk." Gross filed suit to challenge this demand. Because <u>all</u> of the relevant records were to be provided electronically, the amount of the fees that may be charged is governed exclusively by subsection (2), under the majority's own analysis. There is no current controversy between the parties concerning "[f]ees for . . . paper cop[ies] not larger than nine by fourteen inches" – the only charges addressed in subsection (1). I do not understand why the majority decides a moot point concerning the costs recoverable under subsection (1).[2]

The only provision concerning fees which is at issue here is § 610.026.1(2). I disagree with the majority's conclusion that agencies cannot collect for the cost of attorney time required to respond to Sunshine Law requests involving electronic records under subsection (2). Subsection (2) provides:

> Fees for providing access to public records maintained on computer facilities, recording tapes or disks, videotapes or films, pictures, maps, slides, graphics, illustrations or similar audio or visual items or devices, and for paper copies larger than nine by fourteen inches shall include only the cost of copies, staff time, which shall not exceed the average hourly rate of pay for staff of the public governmental body required for making copies and programming, if necessary, and the cost of the disk, tape, or other medium used for the duplication. Fees for maps, blueprints, or plats that require special

---

[2]     I do not necessarily disagree with the majority's analysis of whether charges for attorney time are recoverable under subsection (1); I merely question why we reach the issue at all. Further, I agree with the majority's explanation as to why *White v. City of Ladue*, 422 S.W.3d 439, 452-53 & n.10 (Mo. App. E.D. 2013), and the fee-shifting provision found in § 610.027, are not relevant to the issue presented here.

2

expertise to duplicate may include the actual rate of compensation for the trained personnel required to duplicate such maps, blueprints, or plats. If programming is required beyond the customary and usual level to comply with a request for records or information, the fees for compliance may include the actual costs of such programming.

As we recognized in *R.L. Polk*, "[s]ection 610.026.1(2) specifically limits the fee for providing access to public records maintained on computer facilities to include only the cost of copies, staff time, and the cost of the medium used for duplication." 309 S.W.3d at 886. The work of in-house attorneys who review documents responsive to a Sunshine Law request for possible privilege or other statutory exemptions, constitutes "staff time" for which fees may be recovered. As the majority notes, the statute does not define "staff" or "staff time," but a common definition is that "staff" means "the personnel responsible for the functioning of an institution or the establishment or the carrying out of an assigned task under an overall director or head." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 2219 (2002). I agree with the majority that in-house government lawyers plainly fall within this definition of "staff" – they are personnel integral to the functioning of the agency by which they are employed, and they carry out assigned tasks under the direction of the agency head. Indeed, such in-house government lawyers are commonly described as "staff counsel," or "staff attorneys." Although I have not located any Missouri judicial decisions defining the term, cases from other jurisdictions recognize that the term "staff" has "a broad common usage," and may include in-house lawyers.[3]

---

[3]     A New Jersey appellate decision explained that "[t]he term 'staff' has a broad common usage. The word has been defined as 'a group of assistants who aid an executive, director, or other person in authority,' or the 'personnel carrying out a specific enterprise.'" *King v. Dep't of Corrs.*, No. A-2096-07T3, 2008 WL 4876082, at *3 (N.J. Super. App. Div. Nov. 13, 2008); *see also, e.g.*, *Parthemore v. Col*, 165 Cal. Rptr.3d 367, 374 (Cal. App. 2013) (regulation gives prisoners right to assert complaints against "the department [of corrections] or its staff"; "we construe the phrase 'department or its staff' to include not only officers, directors, and employees of the department, but also independent contractors, like defendant, who are retained by the department to provide services on its behalf."); *Davis v. Traub*, 565 P.2d 1015, 1017 (N.M. 1977) (statute authorized "the district attorney and the

3

In its *amicus* brief, the American Civil Liberties Union of Missouri Foundation suggests that subsection (2) only allows "'staff time' needed for making copies and programming" to be charged. The majority comes to a similar conclusion. But that is not what subsection (2) says. It provides that fees for providing access to records on disk may include "staff time, which shall not exceed the average hourly rate of pay for staff of the public governmental body required for making copies and programming, if necessary." The ACLU and the majority read this provision as if it stated that only "staff time . . . required for making copies and programming" were recoverable. But the statute does not say that. Instead, it limits the *hourly rate* which may be charged for "staff time," to only permit recovery at the rate of pay for clerical or administrative employees (and computer programmers). The statute could just as easily have authorized an agency to charge for "staff time, which shall not exceed the federally mandated hourly minimum wage." The reference to the rate of pay for staff needed to copy documents only limits the <u>amount</u> that may be charged for "staff time"; it does not limit the categories of employees, or the particular tasks, which may constitute "staff time."

The fact that subsection (2) permits an agency to recover fees for <u>all</u> "staff time" is confirmed by comparing the current version of subsection (2) to the version that existed prior to statutory amendments in 2004. The pre-2004 version of subsection (2) provided:

> Fees for providing access to public records maintained on computer facilities, recording tapes or discs . . . shall include only the cost of copies, **staff time required for making copies and programming, if necessary**, and the disk or tape used for the duplication.

---

attorney general and their staffs" to be present during grand jury proceedings; "Staff in this context refers to the legal staff of the district attorney or the attorney general's office, e.g. assistant district attorneys or assistant attorneys general.").

4

§ 610.026.1(2), RSMo 2000 (emphasis added). Thus, prior to 2004, subsection (2) said exactly what the ACLU and the majority interpret the current language to mean: it authorized the recovery of only that "staff time" which was "required for making copies and programming." The majority concedes this. *See* Maj. Op. at 16 ("The language prior to the 2004 amendment was clear that it was only the *staff time required for making copies* that was allowable under this Subsection (2).") But the statute was amended by S.B. 1020, 92d General Assembly, 2d Regular Session (2004), so that it now allows agencies to charge fees for *all* "staff time," limited however to "the average hourly rate of pay for staff of the public governmental body required for making copies."

As the majority recognizes, we must presume that the legislature's 2004 amendment of subsection (2) was intended "'to effect some change in the existing law.'" Maj. Op. at 12 (quoting *State ex rel. Pub. Counsel v. Pub. Serv. Comm'n*, 259 S.W.3d 23, 31 (Mo. App. W.D. 2008)). The contrast between the pre- and post-2004 versions of subsection (2) makes clear that the current version of the statute places no limits on the particular tasks which may be performed during chargeable "staff time." I see no basis to exclude necessary attorney time from the "staff time" for which an agency may charge under subsection (2).

As the majority notes, subsections (1) and (2) are differently worded with respect to the labor costs which may be chargeable to a person seeking records under the Sunshine Law. Subsection (1) refers to "charges for search, research, and duplication time," while subsection (2) authorizes agencies to charge for "staff time." If anything, subsection (2) appears to be worded *more broadly* than subsection (1), since it does not limit the chargeable "staff time" to any particular tasks. Having found that attorney time is properly chargeable under subsection (1) (when paper documents under 9x14 inches are being produced), it is incongruous for the majority to then hold that the identical attorney work cannot be charged to a requester

5

under subsection (2), simply because the records are oversized or provided in an electronic form.

As the majority properly recognizes, there may be many circumstances in which the services of attorneys are reasonably necessary to formulate a response to a Sunshine Law request. The statute expressly requires agencies to segregate material which is exempt from disclosure from that which is nonexempt. § 610.024.1.[4] Among its many exemptions, the Sunshine Law authorizes agencies to withhold from disclosure "confidential or privileged communications between a public governmental body or its representatives and its attorneys"; it also specifies that "[l]egal work product shall be considered a closed record." § 610.021(1). There will plainly be circumstances in which legal expertise is reasonably necessary to determine whether particular records are "privileged" or constitute "legal work product." Where a Sunshine Law request implicates records which are potentially exempt from disclosure, and legal expertise is reasonably necessary to resolve exemption questions, the time spent by staff counsel _is_ "directly related to providing access to electronic records" (the majority's test for recoverability of "staff time" under subsection (2), *see* Maj. Op. at 17). While subsection (2) imposes limits on *how much* an agency can charge for the work of an in-house attorney necessary for responding to a Sunshine Law request, nothing in the statute categorically excludes such services from being charged *at all*.

---

4    Gross and his *amici* suggest that, because § 610.024.1 requires an agency to segregate exempt and nonexempt records in formulating its response to a records request, this necessarily means that the agency cannot charge the requester for that work. The conclusion Gross draws does not follow. The entire process of responding to records requests, and timely providing requesters with nonexempt records, is statutorily mandated – yet an agency can plainly recover at least some of its costs for discharging its statutory obligations. The fact that a separation of exempt and nonexempt records is statutorily required as part of an agency's response *supports* the agency's recovery of its costs to perform this task; it does not *prohibit* such recovery.

6

I find some further support for the recovery of the costs of in-house attorney work in § 610.027.6. That provision states:

> A public governmental body which is in doubt about the legality of closing a particular meeting, record or vote may bring suit at the expense of that public governmental body in the circuit court of the county of the public governmental body's principal place of business to ascertain the propriety of any such action, or seek a formal opinion of the attorney general or an attorney for the governmental body.

This provision clearly contemplates that an agency responding to a Sunshine Law request may face questions concerning statutory exemptions, which require it to seek the assistance of "an attorney for the governmental body." Thus, the General Assembly plainly contemplated that staff counsel might be involved in the processing of Sunshine Law requests. Further, it is significant that § 610.027.6 states that, if the agency chooses to file suit to clarify the status of particular records or meetings, such a suit will be prosecuted "at the expense of that public governmental body." Section 610.027.6 contains no similar qualifier requiring the agency to bear its own costs, if it utilizes the expertise of "an attorney for the governmental body."

I agree with the majority that reversal is required with respect to Gross' second Point, although for different reasons. In his petition, Gross challenged the demand from the Governor's Office that he pay for estimated staff time at the rate of $40.00 per hour. It appears from the parties' briefing (although not from the face of the petition itself) that "the average hourly rate of pay for staff . . . required for making copies" may be substantially less than $40.00 per hour. Therefore, on my reading of subsection (2), it appears that the Governor's Office may have significantly exceeded the amount it was entitled to charge Gross for any services performed by its staff attorneys. Gross may also have a basis to dispute the Governor's Office's estimate that 90.46 hours of staff time would be needed to perform any required tasks. Therefore, I believe that Gross has stated a claim that

7

the Governor's Office violated the Sunshine Law when it demanded that Gross pay $3,618.40 in estimated costs. I accordingly concur in the majority's reversal of the circuit court's grant of judgment on the pleadings with respect to this issue.

_____
Alok Ahuja, Judge

8